626 A.2d 141

COMMONWEALTH of Pennsylvania, Appellee,

v.

Peter RODRIGUEZ, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 25, 1993.

Decided June 1, 1993.

556

John W. Packel, P. Rodriguez, Stuart B. Lev, Philadelphia, for appellant.

Catherine Marshall, Ronald Eisenberg, Laurie Magid, Philadelphia, for Com.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## OPINION OF THE COURT

MONTEMURO, Justice.

This is an appeal from the judgment entered by the Superior Court 415 Pa.Super. 659, 601 A.2d 373 affirming the judgment of sentence of the Court of Common Pleas of Philadelphia County. We granted allocatur to consider whether the Superior Court erred in its application and analysis of harmless error review in determining that the prosecutor's comments during closing argument regarding appellant's failure to testify constituted harmless error. We find that the Superior Court did err, and that appellant is entitled to a new trial.

Appellant's convictions of rape and involuntary deviate sexual intercourse arose out of his assault upon J.S. J.S. is mildly retarded, legally blind and suffers from cerebral palsy. She lives in a community living situation with one other mentally handicapped woman, Lisa Hughes, and a counselor, Victoria Mason.

On June 18, 1986, Mason decided to take J.S. and Hughes to the grocery store. J.S. complained that she was too tired, and decided to stay home instead. Mason and Hughes picked up another counselor, Gloria Breedlove, and her two clients. Instead of going to the store, the two counselors made a stop to buy some marijuana, and then went to a local bar. At the bar, Mason and Breedlove entered into a conversation with appellant and two of his friends. Thereafter, they all left together, and, after a trip to the grocery store, went to Breedlove's apartment.

At the apartment the group ingested alcohol, marijuana and cocaine. Mason invited appellant back to her apartment. She left Hughes behind in Breedlove's apartment, and went to her apartment with appellant. After making sure that J.S. was asleep in her room, Mason took appellant into her own room wherein the couple engaged in oral sex. Approximately an hour later, Mason went into the bathroom. When she came out ten minutes later, appellant was no longer in her room. According to Mason, she then went to J.S.'s room where she

found appellant, nude, sitting on J.S.'s bed. J.S. was also nude, and had her nightgown in her hand. She told Mason that appellant had tried to talk her into having oral sex. Appellant denied that he did anything wrong, and the two of them left J.S.'s room.

Several days later, J.S. reported the incident to another counselor, and subsequently, to the police. Her version of the incident differed somewhat from that of Mason's. For instance, J.S. described the incident as lasting much longer than Mason's version would allow for. She described her assailant as the complete opposite of appellant. J.S. stated that he was tall, skinny, dark skinned, and with a moustache.[1] Additionally, J.S. denied that Mason entered the room when her attacker was present. Finally, she testified that the third roommate was present in the apartment when she was attacked. A physical examination revealed that J.S. had contracted two venereal diseases: chlamydia and gardenella.

On September 12, 1986, appellant was arrested for the rape of J.S. Thereafter, he was tried by a jury before the Honorable Levy Anderson in the Court of Common Pleas of Philadelphia County. Appellant chose not to testify at trial. Instead, he hoped that he would be acquitted on the basis of the contradictions in the Commonwealth's case and because of what the defense believed to be a lack of credibility on the part of the Commonwealth's witnesses. On August 1, 1990, however, the jury found appellant guilty of both rape and involuntary deviate sexual intercourse. The trial court denied post-verdict motions and sentenced appellant to a prison term of five to ten years for involuntary deviate sexual intercourse, and a consecutive prison term of three to six years for rape. Appellant appealed and on September 27, 1991, the Superior Court affirmed the judgment of sentence. This appeal follows.

■ Appellant contends that the Superior Court erred in failing to find reversible error in the trial court's refusal to

1. Appellant apparently does not fit this description, as he is described as short, i.e. 5'5" tall, stocky, clean shaven, and fair complexioned.

grant appellant a new trial based on several prejudicial comments made by the prosecutor during closing argument. During his closing argument the prosecutor made the following statements:

> Well, first let's go back to the fact that he [defense counsel] said he may testify or he may not testify. Does that sound like a lawyer for an innocent man? Mr. Rodriguez has a lawyer and his job is to get him off the hook and they talk about this case and they know what is going on. You sit there and you are an innocent person, you get up and let your lawyer play games, he may testify, he may not, if we can beat it by him testifying, we will do it. If we can't beat it that way, we are not going to let him testify. It is his words that come back to haunt him. When you listen to what he says he is jumping all around. That's what he is doing, playing criminal defense lawyer. Don't let him do that. What did he say? Besides saying he may testify, he may not. Let see what happens. Now they decide it is in their best interest that he doesn't testify. That is fine, you can't hold it against him for not testifying, you can hold Mr. Owens back for what he said. So, they decided not to testify. What's his defense ...

Several minutes later the prosecutor continued on with this theme when he argued:

> He decides to run to Puerto Rico for four years, does that sound like what an innocent man does? Does that sound like an innocent man or that he changes defenses three times and has his lawyer say if you can beat it without me testifying, do it; if you can beat it with me testifying, do it; whatever it takes just beat it. Does that sound like an innocent man?

Both the trial court and the Superior Court refused to grant appellant a new trial on the basis of these remarks.[2]

---

**2.** The Commonwealth argues that appellant has waived his claims regarding the prosecutor's closing argument. This contention is without merit. It is apparent from the record that defense counsel objected several times during the prosecutor's closing argument at the continual mentioning of appellant's failure to testify. Accordingly, we find that appellant has not waived this claim.

■ It is beyond question that a defendant has an absolute right to refrain from testifying. *Commonwealth v. Lewis*, 528 Pa. 440, 598 A.2d 975 (1991). It is also well settled that a prosecutor cannot comment on a defendant's failure to take the stand in his own defense.[3] *Id.* If a prosecutor does comment, even by implication, on the defendant's failure to testify, then the Commonwealth has the burden of proving that the error it made was harmless beyond a reasonable doubt. *Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973).

Instantly, the Superior Court recognized that the prosecutor committed prejudicial error when it commented on the defendant's failure to testify. It nevertheless refused to grant appellant a new trial because it concluded that the error was harmless. In making this determination, the Superior Court stated that "even though there is a possibility that the prosecutor's comments contributed to the verdict against appellant, the properly admitted evidence of guilt is overwhelming when compared to the prejudicial effect of the error." (Superior Court memorandum at 4.) We find that this analysis is flawed and the conclusion erroneous.

In *Commonwealth v. Story*, 476 Pa. 391, 406, 383 A.2d 155 (1978), we determined that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless." We further declared that for an error to be harmless, "the uncontradicted evidence of guilt must be so overwhelming, and the prejudicial effect of the improperly admitted evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict." More recently, we

---

**3.** 42 Pa.C.S.A. Sec. 5941(a) provides that "except defendants actually upon trial in a criminal proceeding, any competent witness may be compelled to testify in any matter, civil or criminal; but he may not be compelled to answer any question which, in the opinion of the trial judge, would tend to incriminate him; nor may the neglect or refusal of any defendant, actually upon trial in a criminal proceeding, to offer himself as a witness, be treated as creating any presumption against him, or be adversely referred to by court or counsel during trial."

reiterated the requirements that must be met for an error to be considered harmless

> (1) the error did not prejudice the defendant or the prejudice was de minimus; or (2) the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Foy*, 531 Pa. 322, 327, 612 A.2d 1349, 1352 (1992).

In the case *sub judice*, the Superior Court found that "there is a possibility that the prosecutor's comments contributed to the verdict against appellant", but nevertheless found the error to be harmless because of the overwhelming evidence of guilt. This reasoning is fatally flawed. The requirements, as outlined above, require that the *error could not have contributed to the verdict*. If there is a finding that the improperly admitted evidence could have contributed to the verdict, then the error cannot be harmless regardless of the overwhelming and uncontradicted evidence of guilt. It is impossible to determine that there is a possibility that the error contributed to the verdict, and at the same time determine that the error was harmless. The two findings are mutually exclusive. One of the paramount determinations in harmless error analysis is that it must be "clear beyond a reasonable doubt that the error could not have contributed to the verdict." *Story*, 476 Pa. at 417, 383 A.2d at 168.

Finding that the Superior Court erred in its application of the harmless error analysis, we are left to decide whether a proper harmless error analysis changes the outcome of this case. We find that it does. In reaching our decision, we are mindful of the fact that

> It should be emphasized that a conclusion that the properly admitted evidence is "so overwhelming," and the prejudicial effect of the constitutional error is "so insignificant" by

comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly. For the effect of such a conclusion is to affirm a conviction where it is conceded that an error of constitutional proportions contributed in some degree to the conviction. In addition, such a conclusion operates to undermine "the deterrent effect ... on the actions of ... prosecutors ...

*Commonwealth v. Davis*, 452 Pa. 171, 305 A.2d 715 (1973).

■ The comments by the prosecutor in this case violated one of the most protected rights of a criminal defendant. Furthermore, the prosecutor did not make only one passing remark regarding appellant's failure to testify, but rather he hammered the point into the minds of the jurors over and over again. Furthermore, although there was a great deal of circumstantial evidence against appellant, there were also a substantial number of internal contradictions in the Commonwealth's case in chief. As appellant points out, J.S. described her assailant as tall and skinny, whereas appellant is short and stocky. J.S. testified that her assailant was in her room for about forty five minutes, whereas Mason testified she had only left appellant alone when she went to the bathroom for about ten minutes. J.S. testified that Mason never entered the room when her assailant was present, whereas Mason said that she entered the room and found appellant, naked, on J.S.'s bed. Mason testified that she asked both appellant and J.S. what had happened when she walked into the room, whereas J.S. denied that Mason ever came in the room. J.S. testified that her assailant got dressed before he left her room, whereas Mason testified that appellant was naked when he left J.S.'s room. Finally, J.S. testified that she had heard her other roommate, Lisa Hughes, in the house when she was being assaulted. She testified that immediately prior to the time when her assailant entered her room, she heard Hughes and Mason talking and putting the groceries away. Mason, contrarily, testified that Hughes was still at Gloria Breedlove's apartment when the attack occurred, and that the groceries

were not put away until afterward. Mason was the only person who could positively identify appellant as having been the person who raped J.S. Defense counsel, during argument, contended that Mason should not be believed, and noted that she had some motivation to implicate appellant in the assault. He also pointed out the inconsistencies in the testimony of Mason and J.S., and attempted to persuade the jurors that perhaps another man had entered the apartment that night and raped J.S., when Mason and Hughes were unpacking the groceries. Given the fact that appellant did not testify, the jury could have believed that not only was appellant's counsel's version of the events untrue, but also that appellant was admitting his guilt by not testifying. In light of the nature of the prosecutor's comments, it is reasonably possible that the jury concluded that appellant's failure to testify was an admission of his guilt. Comparing the evidence to the error in this case leads us to conclude that the error could not be harmless beyond a reasonable doubt; especially in light of the fact that the error was one of a significant magnitude.[4] Accordingly, the judgment of sentence is reversed, and a new trial is ordered.

---

4. *To demonstrate the sanctity with which we regard a defendant's exercise of his right not to testify, we note that we recently held that it can never be harmless error for a trial judge to fail to instruct the jury that they cannot draw an adverse inference from a defendant's failure to testify, when such an instruction is requested.* Commonwealth v. Lewis, *528 Pa. 440, 598 A.2d 975 (1991). Clearly, therefore, it will rarely be found to be harmless error when a prosecutor violates this right by mentioning the defendant's failure to testify.*