634 A.2d 192

COMMONWEALTH of Pennsylvania, Appellee,

v.

Christopher NOLEN, Appellant.

Supreme Court of Pennsylvania.

Argued May 8, 1992.

Decided Nov. 22, 1993.

78

George F. Schultz, Asst. Public Defender, for appellant.

Julia Feld, York, William T. Tully, Asst. Dist. Atty., Harrisburg, Gloria T. McPherson, Landisburg, for appellee.

Before NIX, C.J., and FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

This appeal presents us with the following issues: whether the trial court improperly restricted cross-examination of a prosecution witness regarding his possible bias or interest in testifying favorably for the Commonwealth; whether the prosecutor impermissibly commented on appellant's right to remain silent; and whether evidence of other crimes was properly admitted.

Appellant and a co-conspirator, Dauntel Evans, were originally charged by information filed on December 21, 1981, with criminal homicide, criminal conspiracy and robbery in connection with the fatal shooting of Carroll Ritchie during the robbery of Ritchie's Tavern in Londonderry Township, Pennsylvania. On April 20, 1982, following a joint trial, appellant and his co-defendant, Evans, were convicted by a jury of second degree murder, robbery and criminal conspiracy. These convictions were affirmed by the Superior Court, 330 Pa.Super. 366, 479 A.2d 595, but were reversed and remanded for a new trial by this Court. *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986).

On remand, a jury once again convicted appellant of second

degree murder, robbery and criminal conspiracy.[1] Following the denial of his post-trial motions, appellant was sentenced to a mandatory life sentence. The Superior Court affirmed the judgment of sentence. 390 Pa.Super. 346, 568 A.2d 686. For the following reasons, we affirm the holding of the Superior Court.

Early in the evening of November 21, 1981, two masked men armed with handguns entered Ritchie's Tavern and approached the bar, whereupon one of the men ordered "Don't move or I'll shoot." When Carroll Ritchie, proprietor of the tavern, approached the two men, ordering them out of the establishment, each of the men fired his gun and then one fired a third shot which hit and killed Ritchie. The men then fled the scene.

Police investigating the shooting found one .38 caliber bullet lodged in a wall in the tavern and one .32 caliber bullet which had passed through a wall. The third bullet, also a .38 caliber bullet, was removed from the victim's body. The investigating officers also recovered a .32 caliber cartridge from the back seat of the car used in the robbery.

Shortly after the murder, David Crater[2], the driver of the getaway car, confessed to his role in the incident and revealed the identity of the two gunmen as appellant and Dauntel Evans. At trial, Crater testified that on November 21, 1981, at approximately 6:00 p.m. he met up with appellant, Dauntel Evans and Joey Boyer to carry out a robbery the four of them had planned a few days earlier. The four men first drove to a store to purchase gasoline, during which time they discussed robbing a certain country grocery store known as "Steinruck's." During this time, both Crater and appellant were in possession of handguns. The conspirators agreed that Crater would drive the car and that appellant and Evans would enter

1. While appellant and his co-defendant, Evans, were scheduled to be tried together on remand, due to the unavailability of co-defendant's counsel, the cases were severed.

2. We would note that throughout the record the name of this witness is spelled as both Crater and Krater. Since the Superior Court has consistently used the former spelling, we will continue to refer to the witness as Crater.

the store. At some point during this conversation, Joey Boyer decided that he no longer wanted any part of the planned robbery, exited the vehicle and walked home.

Appellant, Evans and Crater then proceeded to Steinruck's Store, but abandoned their plan to rob the store after noting the number of people present in the store. After the three of them decided to choose an alternate site, Crater suggested that they rob Ritchie's Tavern. When they arrived at Ritchie's tavern, Crater entered the bar, surveyed the premises, and then returned to the car. Appellant and Evans concealed their faces and entered the tavern, armed with the handguns. Crater testified that he heard three shots after the other two had entered the bar. Appellant and Evans then ran from the tavern and the three men drove off.

The first issue raised by appellant concerns the trial court's refusal to permit cross-examination of Joey Boyer regarding bias. It is well settled that it is within the discretion of the trial court to determine the scope and limits of cross-examination and that this Court cannot reverse those findings absent a clear abuse of discretion or an error of law. *Commonwealth v. Birch*, 532 Pa. 563, 616 A.2d 977 (1992). Our review of the record leads us to conclude that the trial court did err in refusing the proffered cross-examination.

At trial, Joey Boyer was called to testify on behalf of the Commonwealth. Prior to cross-examining Boyer, defense counsel informed the court that it intended to question the witness regarding any favorable treatment received by Boyer in exchange for his testimony. It appears that at the time Boyer agreed to testify on behalf of the Commonwealth, he was incarcerated in the Dauphin County Prison on a charge of theft and was also awaiting extradition to Virginia on unrelated burglary and theft charges. At some point after he agreed to testify in the instant matter, but before the time of trial, the Virginia charges were dropped and the Dauphin County charge was reduced to criminal mischief. A fine of $200 was imposed and Boyer was released from prison.

Rather than permit the cross-examination, the trial court held an *in camera* hearing in an effort to ascertain whether the allegations of bias had any merit. The trial court ruled that the intended cross-examination of Boyer fell outside the ambit of permissible cross-examination since, according to the testimony of Boyer and the district attorney, there had been no promises of leniency with respect to those charges and since the charges were no longer *pending*. On appeal, the Superior Court concluded that the trial court erred in so ruling, but found that the error was harmless. In so concluding, the Superior Court relied upon this Court's decisions in *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986), and *Commonwealth v. Coades*, 454 Pa. 448, 311 A.2d 896 (1973).

In *Evans*, the defense sought to cross-examine a Commonwealth witness as to any promise of leniency regarding charges which were pending against him in the same jurisdiction in which the case at bar was being tried. We held there that such cross-examination was permissible. Similarly, in *Coades*, we held that a witness under indictment for charges stemming from the same crime which formed the basis for the case in which that witness had been called to testify could be cross-examined as to any favorable treatment that witness may have already received from the prosecution with regard to the witness' own case. Here, the charges which Boyer had pending at the time he agreed to testify neither stemmed from the same incident which is the subject of the case *sub judice* nor were the charges pending at the time of appellant's trial. The Superior Court, while noting these distinctions, nevertheless concluded that this Court's holdings in *Evans* and *Coades*, when read together, would permit the cross-examination requested here. We agree.

■ In *Evans* and *Coades* we reiterated the well established rule that a witness may be cross-examined as to any matter tending to show the interest or bias of that witness.[3]

3. See also, *Commonwealth v. Birch*, 532 Pa. 563, 616 A.2d 977 (1992) and *Commonwealth v. Butler*, 529 Pa. 7, 601 A.2d 268 (1991). In *Birch*, this Court held that it was reversible error to refuse to permit cross-

Our primary concern in both of those cases was with assuring that any possible bias of a witness regarding hopes for leniency or actual favorable treatment be revealed to the jury so that it could properly evaluate the witness' credibility. Clearly, a similar concern is present here. We agree with the Superior Court that from the facts presented here, it can easily be inferred that at the time Boyer agreed to testify for the Commonwealth, he had expectations of leniency with regard to his pending charges, and that when he did so testify, he was obliged to tailor his testimony in favor of the prosecution. The fact that the charges were no longer pending is of no moment. As Judge (now Justice) Montemuro so aptly stated in his opinion below: "If this were the test, then the Commonwealth need only ensure that its witness receive the favorable treatment before the start of the trial to avoid cross-examination challenging the witness' bias." As we said in *Evans:*

> The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise a doubt in the mind of the jury as to whether the prosecution witness is biased. *It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.*

*Commonwealth v. Evans,* 511 Pa. at 225, 512 A.2d at 632 (emphasis added).[4]

examination of the victim of the shooting which formed the basis for the charges at issue, regarding possible bias arising from that witness' contemplated civil claim against the defendant arising out of the same incident. Similarly, in *Butler,* we held that the defense should have been permitted to cross-examine as to bias, a prosecution witness who happened to be a defendant in a civil suit instituted by the very defendant against whom he testified.

4. Contrary to Mr. Justice Papadakos' contention, we do "reaffirm" the holding of *Evans* in finding that it was, indeed, error on the part of the trial court to refuse defense counsel's requested cross-examination. If, however, Mr. Justice Papadakos is advocating a rule that such a failure will always be *reversible error,* we note only that we are not inclined to

 Clearly, then it was error for the trial court to refuse defense counsel's requested cross-examination. Upon independent review of the record, we must, however, agree with the Superior Court that the error of the trial court was harmless. As this Court held in the seminal case of *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978), an error will be deemed harmless where the appellate court is convinced beyond a reasonable doubt that the error could not have contributed to the verdict.[5] Guidelines for determining whether an error is harmless include: (1) whether the error was prejudicial to the defendant or if prejudicial, whether the prejudice was *de minimis;* (2) whether the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) whether the evidence of guilt was so overwhelming as established by properly admitted and uncontradicted evidence that the prejudicial effect of the error was so insignificant by comparison to the verdict. *Id.* at 410–415, 383 A.2d at 164–166.

Applying these guidelines to the facts of the instant matter, it is apparent that the error was, indeed, harmless. Boyer's testimony was relevant only to establish that appellant participated in the planning of the robbery. He was not able to place appellant at the scene of the crime as he had abandoned the group prior to that time. Moreover, Boyer's testimony regarding the events which transpired prior to the robbery was corroborated by other witnesses including Crater, Gentry Smith and Robert Condran.

 Appellant next argues that the trial court erred in denying a defense motion for mistrial after the prosecutor, on

accept such a rule and in support thereof, refer simply to our analysis in the succeeding paragraphs regarding the issue of harmless error.

5. Mr. Justice Papadakos claims that this majority opinion "misreads" the holding in *Commonwealth v. Story,* by failing to include that in order for an error to be deemed harmless, it must be "clear beyond a reasonable doubt that the error could not have contributed to the verdict." (Dissent opinion at p. 199). We merely point out that the sentence *to* which this footnote is appended clearly sets forth this exact standard.

cross-examination of appellant, improperly referred to appellant's silence at his preliminary hearing and first trial. The decision to grant a mistrial is proper only where an event prejudicial to a defendant occurs at trial and where the unavoidable effect of that event is to deprive the defendant of a fair trial. *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603 (1986).

It is axiomatic that a defendant enjoys a Constitutional right to remain silent and that it is a violation of that right where reference is made to the accused's post-arrest silence. *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982). A violation of that right will, however, be harmless error where it is clear that the error could not have contributed to the verdict. *Id.* at 584, 454 A.2d at 540. Upon review of the record, we agree with the Superior Court that it was not error to deny the request for mistrial.

The subject testimony was as follows:

Q. Christopher, you have been present throughout the course of this trial and listened to every witness who has testified, have you not?

A. Yes, I have.

Q. And you were present at another proceeding and listened to the testimony of every witness that testified, did you not?

A. Yes, I have.

Q. And you were present at a preliminary hearing and listened to witnesses from the Commonwealth testify and heard every one of them, didn't you?

A. Yes, I have.

Q. Prior to your testimony here in this courtroom today, however, you have not testified yourself, have you?

At that point, defense counsel immediately objected, asking for a mistrial. At sidebar, the defense argued that the above questions were designed to point out to the jury that this was the first time appellant had testified. The trial court denied the mistrial, but cautioned the prosecution that it should

refrain from pursuing any line of questioning which would suggest to the jury that they draw an adverse inference from the appellant's lack of participation in prior proceedings. At that time, counsel for appellant indicated that he did not want the court to re-emphasize the point by giving an immediate cautionary instruction. Accordingly, sidebar concluded and the prosecution continued its cross-examination with the following question:

> Q. Christopher, the point I am making by my question is that you have had the benefit in your testimony here today in this courtroom of having heard all of the Commonwealth witnesses testify not only in this proceeding, but on prior occasions, isn't that correct?

We cannot agree with appellant that the above quoted language infringed upon appellant's constitutional right to remain silent. The significance of this line of questioning was clear; it was an attempt on the part of the Commonwealth to establish the opportunity of appellant to tailor his testimony in accord with what had already been testified in a manner that would benefit him. The prosecution reiterated this point in its closing argument, making it even more apparent that the purpose of such questioning was to impeach appellant's testimony by showing that appellant had the opportunity to listen while other witnesses testified and then conform his testimony to the extent that it benefitted him. We cannot conclude that the jury here could have inferred from this line of questioning that appellant had invoked his right to remain silent and that an adverse inference should be drawn therefrom. Moreover, the prosecutor's point was a fair inference from the evidence. For example, appellant did testify that he encountered Evans, Boyer and Crater on the evening in question, but claimed that such encounter occurred earlier than 6:00 p.m. that evening. He also testified that at approximately 6:00 p.m., David Crater borrowed the car which was later identified as the getaway car, but that appellant did not encounter Crater any time thereafter.

Even if we were to conclude that this line of questioning by the prosecution did make reference to the silence of appellant,

we would conclude that this indirect reference was harmless. The questions proffered by the Commonwealth were not suggestive of any exercise by appellant of his right to remain silent at a time when he, if not guilty, would have likely informed authorities of his defense. For instance, this line of questioning did not imply that appellant had exercised his right to remain silent when faced with questions from authorities. Nor did the Commonwealth here imply silence on the part of appellant after being informed of his constitutional rights. Additionally, this line of questioning was clearly not designed to lead the jury into believing that appellant had a duty to come forward with this evidence at an earlier date but that he chose not to do so. Accordingly, the facts presented here are clearly distinguishable from those presented in prior decisions of this Court wherein we found that references to silence had, indeed, been uttered and that such was prejudicial. *See, e.g., Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537 (1982); *Commonwealth v. Singletary,* 478 Pa. 610, 387 A.2d 656 (1978); *Commonwealth v. White,* 482 Pa. 197, 393 A.2d 447 (1978).

Furthermore, during its charge to the jury, the trial court informed the jury on two separate occasions that appellant had no duty to testify and that he was entitled to the presumption of innocence throughout the trial and thus, had no burden to do anything except be physically present. Viewing this charge together with the overwhelming evidence of guilt presented at trial, we cannot conclude that the indirect reference to appellant's silence at the prior proceedings in any way contributed to the verdict. Accordingly, we agree with the Superior Court that it was not error to deny the motion for mistrial.

▪ Finally, appellant contends that the trial court erred in permitting evidence of appellant's participation in two other burglaries one of which occurred just over a week prior to the instant crime, the other just a couple of days prior thereto.

▪ Generally, evidence of other crimes is inadmissible against a defendant who is being tried for another crime if the

admission of such is merely for the purpose of showing the defendant's criminal disposition. *Commonwealth v. Lark,* 518 Pa. 290, 543 A.2d 491 (1988). However, evidence of other crimes is admissible where that evidence forms part of the chain or sequence of events leading to the crime at issue and enhances the natural development of the facts. *Id.,* at 303, 543 A.2d at 497.

Here, both appellant and David Crater testified that they were involved in the burglaries of the Brubaker home on November 12, 1981 and the Herring residence on November 19, 1981. During both of these robberies, a handgun was taken from the residence. The murder weapon that was retrieved from the creek after the Ritchie robbery and murder was subsequently identified as a handgun that was taken during the Brubaker burglary. At trial, a ballistics expert testified that the .32 caliber projectile found at Ritchie's Tavern and the .32 caliber cartridge found in the back seat of the getaway car matched ammunition left behind in the Herring burglary and that these projectiles could have been used in the type of handgun stolen during the Herring burglary. We cannot dispute the trial court's finding that this evidence was "extremely" probative especially given the fact that none of the eyewitnesses to the Ritchie robbery and murder were able to positively identify the perpetrators. Moreover, any prejudicial effect that this evidence may have had was minimized by the trial court's cautionary instructions wherein it informed the jury that evidence of these prior crimes was presented so as to provide them with all the facts necessary to determine the guilt or innocence of appellant as to the instant charges. Thus, we conclude, as did the Superior Court that the evidence of other crimes was properly admitted.

The Order of the Superior Court is affirmed.

LARSEN, J., did not participate in the consideration or decision of this matter.

McDERMOTT, J., did not participate in the decision of this matter.

PAPADAKOS, J., files a dissenting opinion.

PAPADAKOS, Justice, dissenting.

I dissent from the majority opinion because I am convinced that the refusal by a trial court to permit cross-examination of a Commonwealth witness as to bias is reversible error.

When the issue is whether the incriminating testimony may flow from a possible promise of leniency to the witness by the prosecution, any limitation on such cross-examination implicates the basic fairness of the right of confrontation and rises to the level of major prejudice to the defendant.

It is the burden of the Commonwealth to prove harmlessness. *Commonwealth v. Haight,* 514 Pa. 438, 525 A.2d 1199 (1987). In certain instances, moreover, harmless error will never lie, as we recently held in *Commonwealth v. Lewis,* 528 Pa. 440, 598 A.2d 975 (1991) (failure of a trial judge to instruct a jury that they cannot draw an adverse inference from a failure to testify cannot be harmless error). By contrast, as I have argued in my recent dissent in *Commonwealth v. Janet Butler,* 529 Pa. 7, 601 A.2d 268 (1991), I would permit a trial court to use its discretion to limit cross-examination where "there are other ways to establish the bias of the witness." That, however, is not the situation in this case.

As the majority holds, *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155 (1978), demands that it must be "clear beyond a reasonable doubt that the error could not have contributed to the verdict." 476 Pa. at 417, 383 A.2d 155. If there is a possibility that the error contributed to the verdict, however, harmless error will not lie because the two findings are mutually exclusive. (See, *Commonwealth v. Rodriguez,* 533 Pa. 555, 626 A.2d 141 (1993), opinion authored by Justice Montemuro, construing *Story* and *Commonwealth v. Foy,* 531 Pa. 322, 612 A.2d 1349 (1992)). Whether cumulative or not, here a prosecution witness gave incriminating testimony in the face of the trial court's refusal to permit his impeachment on the stand. As a consequence, the jury had no way of determining the credibility of the witness.

Even more compelling in this regard is the majority's failure to read the critical portion of *Commonwealth v. Evans*, 511 Pa. 214, 512 A.2d 626 (1986):

> ... Whenever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it. The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise a doubt in the mind of the jury as to whether the prosecution witness is biased. It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.

> \* \* \* \* \* \*

> Thus, we hold that the right guaranteed by Art. I Section 9 of the Pennsylvania Constitution to confront witnesses against a defendant in a criminal case entails that a criminal defendant *must be permitted* to challenge a witness's self-interest by questioning him about *possible* or actual favored treatment by the prosecuting authority in the case at bar, or in any other non-final matter involving the same prosecuting authority.

> Reversed and remanded for a new trial.

511 Pa. at 224–226 (citations omitted; emphasis added).

If the underscored words do not lay down a per se rule, then I don't know what per se means. *Evans* mandates cross-examination and the trial court cannot restrict same. The majority is obfuscating *Evans* rather than reaffirming it.

Although the facts herein indicate that no charges were pending or promises of future leniency made to this witness, the fact remains that he had been given a substantial reduction in the charge against him in Pennsylvania. He was either extremely lucky or the Commonwealth heard his pleas when it was known to all that he would be a prosecution witness. I choose to believe the latter. While luck may not be a matter cognizable at law, a defendant has an absolute right to inquire into "possible" reasons for the reduction charges and penalties. The fact that the charges against the witness were no longer pending is of no concern, as the majority agrees.

I conclude that we must reaffirm *Evans*. As in *Lewis*, a failure to allow cross-examination on leniency is one of those issues which mandates a finding of prejudicial error based on a constitutional right of confrontation.