J-A05022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES BROOKS, | |
| Appellant | No. 785 EDA 2014 |

Appeal from the Judgment of Sentence entered January 31, 2014,
in the Court of Common Pleas of Delaware County,
Criminal Division, at No(s): CP-23-CR-0005143-2013

BEFORE:  GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J:                    **FILED FEBRUARY 24, 2015**

James Brooks, ("Appellant"), appeals from the judgment of sentence imposed after a jury convicted him of firearm not to be carried without a license, and possession of a firearm with an altered manufacturer's number; and the trial court convicted him of carrying a firearm as a prohibited person, possession of a small amount of marijuana, and DUI general impairment (refusal).[1]

The trial court summarized the pertinent facts and procedural history as follows:

> On Sunday, April 21, 2013, at approximately 4:50 AM, Officer Amanda Klingensmith of the Upper Darby Police Department, while in full uniform and on patrol in a marked

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1), 6110.2(a) and 6105(a)(1); 35 P.S. § 780-113(a)(31); and 75 Pa.C.S.A. § 3802(a)(1).

vehicle, was engaged in assisting at an accident scene in Upper Darby Township, Delaware County, Pennsylvania. The early morning calm was interrupted by squealing tires. The officer looked in the direction of the noise, saw a vehicle drive up onto a curb (near the intersection of Marshall Road and Long Lane), strike an object and, simultaneously, heard a loud crash. She then watched the vehicle back off the sidewalk, proceed across Marshall Road and then north on Long Lane. Officer Klingensmith jumped into her patrol car, activated her emergency overhead lights and siren, and began pursuit of the errant vehicle. As she passed the intersection from which the flurry of vehicular activity was seen, she noticed one traffic light was demolished and the remaining lights at the intersection were flashing. Her pursuit ended a short distance up Long Lane when she was able to stop behind the vehicle, a silver Pontiac Grand Am (PA Tag JGG 1636). She saw fluid flowing onto the street which streamed downhill toward the patrol car. Officer Klingensmith reported the stop to her dispatcher, provided identification information on the car, and explained it was leaking. As she approached the passenger side window, she noted that the odor from the fluid emanating from the bottom of the car smelled like gasoline. A backup from the Upper Darby Police Department, Officer Randy Desrosiers, appeared at the scene.

When she looked in the passenger window, she saw a man in the driver's seat (identified as [Appellant]) slumped over with his eyes closed. The Officer inquired of [Appellant] whether he was sick or injured. After opening his eyes, he acknowledged he was neither. No signs of physical injury were evident.

[Appellant] was directed to shut off the ignition and exit to the front of the vehicle. She observed heavy damage to the front of the car. After he complied, [Appellant] was told to move onto the sidewalk and away from the leaking car. [Appellant] showed classic signs of intoxication: eyes bloodshot and glassy, slurred speech and stumbling gait, all laced with the smell of alcohol.

Another Upper Darby police officer, Sergeant Steven Oreskovich, a certified Field Sobriety Test instructor was summoned to the scene. He asked [Appellant] to perform three field sobriety tests (horizontal gaze nystagamus ("HGN") test, the walk-and-turn test, and the one-legged stand test).

[Appellant] failed all three. Sgt. Oreskovich opined that the test results indicated [Appellant] was incapable of safely operating a motor vehicle at the time. [Appellant] was taken into custody and transported to nearby Delaware County Memorial Hospital, where, after having been advised of his rights and responsibilities in connection with chemical testing of drivers, he refused to allow a blood draw. [Appellant] was then taken to the Upper Darby Township Police Headquarters.

Shortly after [Appellant] was arrested, Officer Desrosier conducted an inventory search of the Pontiac before it was towed from the scene. He first found two vials (containing green leafy matter) in the vehicle's center console. In addition, within the center console, Officer Desrosiers found two plastic vials within which was seen a green leafy vegetable matter. Both field tested positive for marijuana. The field test was confirmed through additional analysis. As he withdrew from the car, he encountered a protruding handle of a handgun, sandwiched between the driver's seat and the center console. The firearm was a black 9 mm Ruger model LC-9 pistol (loaded with five 9 mm rounds and one in the firearm's chamber). He noted that the gun's serial number had been obliterated.

A criminal history check through NCIC revealed that [Appellant], in 1993, was convicted of Robbery, a felony in Philadelphia. That disposition rendered it illegal for [Appellant] to possess a firearm. The investigation also included a check for a license to allow [Appellant] to carry a concealed weapon. [Appellant] never secured such an authorization. Inquiry of PennDOT disclosed that [Appellant] was not licensed to drive and that the Pontiac was registered to another individual.

Subsequent testing revealed that the Ruger was operational and that the rounds discovered were live. Based on the pre-dawn events and the information obtained, [Appellant] was charged with: Person not to possess, use, manufacture, control, sell or transfer firearms; Possession of a firearm with altered manufacturer's number; Firearms not to be carried without a license; Possession of a small amount of marijuana; Driving Under the Influence (General Impairment, refusal); Driving Under the Influence (Controlled Substance – impaired ability) and, several summary offenses.

Trial Court Opinion, 7/9/14, at 1-3 (footnotes omitted).

A bifurcated trial commenced on December 10, 2013, at the conclusion of which the jury found Appellant guilty of firearm not to be carried without a license, and possession of a firearm with an altered manufacturer's number, and the trial court found Appellant guilty of carrying a firearm as a prohibited person, possession of a small amount of marijuana, and DUI general impairment (refusal). The Commonwealth withdrew the remaining charges.

Following a hearing on January 31, 2014, the trial court sentenced Appellant to ten (10) to twenty (20) years of imprisonment, followed by four (4) years of probation. Appellant filed a motion for reconsideration, which the trial court denied on February 12, 2014. This appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I. SHOULD THE SCOPE OF CROSS EXAMINATION OF CHARACTER WITNESS TESTIMONY BE EVALUATED UNDER PA.R.E. 404-405 OR PA.R.E. 609?

II. SHOULD THE APPELLANT'S PRIOR CONVICTION HAVE BEEN PRECLUDED FROM THE SCOPE OF CROSS EXAMINATION OF APPELLANT'S CHARACTER WITNESSES?

Appellant's Brief at 2.

Appellant's issues both pertain to the trial court's ruling regarding the scope of cross-examination of the Appellant's character witnesses. Upon review, we conclude that these claims are waived because Appellant failed to raise a timely objection at trial.

The record reflects that after the Commonwealth rested and before presentation of the defense to the jury, the trial court held a colloquy, out of hearing of the jury, regarding whether Appellant would testify on his own behalf. The trial court conducted the colloquy to ensure that Appellant understood his right to testify, and that any waiver by Appellant of that right was voluntary and knowing. N.T., 12/10/13, at 249-256. The trial court explained to Appellant that if he chose to testify, the Commonwealth could potentially cross-examine him about his prior *crimen falsi* convictions. ***Id***.[2]

In an effort to gauge whether Appellant should testify, Appellant's counsel asked the trial court if it would issue an anticipatory ruling as to whether it would allow the Commonwealth to cross-examine Appellant on his prior convictions and if so, to issue a ruling as to the scope of such cross-

---

[2] ***See Commonwealth v. Novasak***, 606 A.2d 477, 487 (Pa. Super. 1992) ("Once appellant place[s] his character in issue via his own direct testimony, the prosecution [is] entitled to exploit the opening on cross-examination and in closing. ***See*** 42 Pa.C.S.A. § 5918(1)."); ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1263 (Pa. Super. 2014) (while, in general, evidence of an individual's character or character trait, which includes prior criminal convictions, is inadmissible to prove that an individual acted in conformance with that character trait on a particular occasion, such evidence is admissible as *crimen falsi* evidence or as rebuttal evidence of good character; where the defendant presents evidence through his own testimony that he has a good reputation in the community and was a peaceful, law-abiding person, this opens the door and allows the Commonwealth to rebut the defendant's claims by impeaching the defendant with the prior convictions during cross-examination); ***Commonwealth v. Nolen***, 634 A.2d 192,195 (Pa. 1993) ("it is within the discretion of the trial court to determine the scope and limits of cross-examination").

examination, in order for Appellant to assess the risk of impeachment if he elected to testify. *Id*. The trial court declined to issue a ruling, and took the matter under advisement. *Id*. at 256. Appellant then elected not to testify, although the trial court instructed him that he had until the following morning to change his mind. *Id*. at 267-268.

The trial court then asked Appellant's counsel whether he intended to present character witnesses who could be potentially cross-examined with regard to Appellant's prior convictions for "robbery, aggravated assault" and "drug misdemeanors." *Id*. at 270.[3] Appellant's counsel responded, "I don't have any witnesses to present as character witnesses", and the proceedings concluded for the day. *Id*. at 270.

_____

[3] *See Commonwealth v. Morgan*, 739 A.2d 1033, 1035 (Pa. 1999) ("Where a character witness has testified as to a relevant trait of the defendant's good character, that witness may be impeached, on credibility grounds, just like any other witness."); *Commonwealth v. Kuder*, 62 A.3d 1038, 1058 (Pa. Super. 2013) (when cross-examining character witnesses offered by the accused, the Commonwealth may test the witnesses' knowledge about specific instances of conduct of the accused where those instances are probative of the traits in question; however, the Commonwealth's right to cross-examine character witnesses is not unlimited: the Commonwealth may not cross-examine a character witness about a defendant's uncharged criminal allegations, or a defendant's arrests that did not lead to convictions); *Commonwealth v. Judd*, 897 A.2d 1224, 1232-1233 (Pa. Super. 2006) (upholding trial court ruling that if the defendant presented character evidence to establish that he was a non-violent person, the Commonwealth would be allowed to present evidence of his more recent prior convictions as impeachment of a character witness through inquiry into specific acts relevant to the character trait in question).

The following morning, Appellant's counsel reiterated to the trial court that Appellant had chosen not to testify, and therefore the issue as to whether the Commonwealth could cross-examine Appellant as to his prior convictions was "a moot argument." N.T., 12/11/13, at 5.

The trial court then asked Appellant's counsel if he nevertheless wanted a ruling as to whether any character witnesses could be cross-examined about prior convictions, in the event that Appellant chose to call character witnesses. *Id*. at 5. Appellant's counsel responded "yes", and the trial court responded:

> With regard to the use of the prior conviction for the purpose of cross-examining a character witness – if [Appellant] puts his character at issue that he is a peaceful and law abiding citizen then I believe he has interjected into the trial a claim that would be unsubstantiated by his record ... he elected to put his character for peaceful and law abidingness at issue and at that point ... the Commonwealth can utilize any prior criminal history in determining whether or not ... the testifying witness was aware of his prior criminal history.

N.T., 12/11/13, at 8.

Appellant's counsel did not object, accepted the trial court's ruling, and stated, "okay Your Honor ... in light of your ruling, we won't enter any character evidence into evidence." *Id*. at 9.

The record thus reflects counsel did not raise a specific objection on the record before the trial court as to the scope of Commonwealth's cross-examination of character witnesses relative to Appellant's prior convictions. *See Commonwealth v. Houck*, 102 A.3d 443, 451 (Pa. Super. 2014) ("the

failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue"). We therefore conclude that Appellant failed to preserve his evidentiary challenge for appellate review.

It is noteworthy that after the trial court offered, *sua sponte,* to issue a ruling regarding the cross-examination of character witnesses, Appellant accepted the trial court's ruling. **See Commonwealth v. Colon**, 846 A.2d 747 (Pa. Super. 2004), *appeal denied*, 582 Pa. 681, 870 A.2d 320 (2005) (where defense counsel acceded to the trial court's ruling and did not place an objection on the record, appellant waived his right to argue this issue); **Commonwealth v. Griffin**, 684 A.2d 589 (Pa. Super. 1996) (In order to preserve an issue for review, a party must make a timely and specific objection at trial, and failure to object to an offer of evidence at the time the offer is made, assigning the grounds, constitutes waiver upon appeal of any ground of complaint against its admission; thus, where the appellant's counsel did not object to the ruling of the trial court, and in fact acceded to the judge's ruling, appellant waived his right to argue this issue on appeal) **and compare to Commonwealth v. Stokes**, 78 A.3d 644 (Pa. Super. 2013).

Furthermore, the record reveals that after the Commonwealth rested on December 10, 2013, Appellant's counsel stated that he had no character witnesses to present, such that any ruling by the trial court as to Appellant's

non-existent character witnesses was purely hypothetical and advisory in nature. N.T., 12/10/13, at 270. While it is possible that Appellant may have procured such character witnesses in the short interval after the Commonwealth rested on December 10, 2013 and before the presentation of the defendant's case on the morning of December 11, 2013, the record contains no indication that any character witnesses existed. In the absence of any character witnesses, the trial court's ruling was advisory.

We conclude that Appellant waived his objection to the trial court's ruling on the scope of cross-examination of character witnesses. However, had Appellant preserved this issue for appellate review, he would not be entitled to relief because even if the trial court's ruling was in error, it was harmless.

> An error is harmless where the uncontradicted evidence of guilt is so overwhelming that, by comparison, the error is insignificant. When discussing harmless error, we have also stated that the Commonwealth can meet its burden of showing harmlessness by persuading us the error did not prejudice the appellant or did so to a de minimis extent and/or by persuading us the properly admitted and uncontradicted evidence was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Hoover***, 16 A.3d 1148, 1150 (Pa. Super. 2011).

We recognize that "[e]vidence of good character is to be regarded as evidence of substantive fact just as any other evidence tending to establish innocence and may be considered by the jury in connection with all of the evidence presented in the case on the general issue of guilt."

*Commonwealth v. Luther*, 463 A.2d 1073 (Pa. Super. 1983). However, where the evidence of guilt is so overwhelming, a trial court's ruling, which results in the defendant's decision to not call character witnesses to testify regarding the defendant's reputation for law-abidingness, may constitute harmless error. *Commonwealth v. Kouma*, 53 A.3d 760, 771 (Pa. Super. 2012).

Here, any error by the trial court in – *hypothetically* - permitting the Commonwealth to cross-examine character witnesses about Appellant's prior convictions, would constitute harmless error given the overwhelming evidence of Appellant's guilt. Officer Klingensmith provided an eyewitness account of the events leading to Appellant's arrest, testifying credibly that she personally observed Appellant's vehicle drive onto the curb at Marshall and Long Lane and crash into an object on the curb. N.T., 12/10/13, at 93. Officer Klingensmith pursued Appellant's vehicle and conducted a traffic stop. *Id*. at 94-100. When the officer ordered Appellant to exit his damaged vehicle for his own safety, she noticed that Appellant displayed the classic signs of intoxication. *Id*. at 101-104. Officer Oreskovich subsequently arrived at the scene and performed field sobriety tests, which Appellant failed. *Id*. at 129-135. Officer Desrosiers who also arrived at the scene testified that after Appellant was arrested, he conducted an inventory search of the vehicle, which needed to be towed because it was damaged and leaking gasoline into the road, posing a safety concern. *Id*. at 146-155.

Officer Desrosiers testified that, upon conducting an inventory search, he retrieved from the vehicle marijuana and a loaded handgun with its serial number obliterated. *Id*. at 152-165. In light of this overwhelming and uncontradicted evidence of Appellant's guilt, we conclude that any error in the trial court's advisory ruling permitting the Commonwealth to cross-examine potential character witnesses would constitute harmless error.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2015