J-A11024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID WEAVER | : | |
| | : | |
| Appellant | : | No. 767 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 26, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001552-2017

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McLAUGHLIN, J.:                 **FILED SEPTEMBER 01, 2020**

David Weaver appeals from the judgment of sentence imposed following

his convictions for Aggravated Indecent Assault – Victim Less than 13,

Corruption of Minors, and Indecent Assault.[1] Weaver challenges the sufficiency

of the evidence of Aggravated Indecent Assault – Victim Less than 13, and

claims the court erred in denying his motion for a mistrial and in ordering him

to register as a sex offender. We affirm Weaver's judgment of sentence, but

remand for the trial court to give Weaver new notification of his registration

requirements.

The Commonwealth charged Weaver with committing the above crimes

based on allegations of events that occurred with his minor niece prior to

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 3125(a)(7), 6301(a)(1)(ii), and 3126(a)(7), respectively.

2012; the Commonwealth also charged Weaver with crimes relating to his minor nephew. At trial, Weaver's niece testified that when she was seven years old, on several occasions, Weaver sat next to her on the couch, placed his hand down her pants, and rubbed her vagina. She described one occasion as follows:

Q. When you say he was moving his finger in a circular motion, like, where on your body was that?

A. My vagina.

Q. Do you know if he touched the outside or the inside or something else?

A. Not like inside, but not like -- I don't know how to explain it.

Q. I know this is super hard and awkward. As a 7-year-old, it would have looked like almost two bumps on your body, is that fair?

A. Yes.

Q. Would he have been on top of the bumps or in between the bumps or something else?

A. Like, in between the bumps.

Q. And he was rubbing in a circular motion?

A. Yeah.

N.T, 8/29/18, at 179.

The Commonwealth also presented the testimony of Sergeant Kyle Hosking, who had interviewed Weaver.[2] Sergeant Hosking testified that when he asked Weaver about the allegations, Weaver responded that he did not

---

[2] Sergeant Hosking was a detective at the time he interviewed Weaver.

know why the victims would make such allegations, "and that they were potentially misconstruing his roughhousing and playing with sexual misconduct." N.T., 8/30/18, at 107. Weaver told Sergeant Hosking that he had trouble remembering things from that period, due to a head injury and frequent heavy drinking. *Id.* at 107-08. Sargent Hosking testified that when he described the specific allegations, Weaver "didn't deny anything. He would – and this was a consistent thing he would do throughout the interview, he would just kind of put his head down and nod." *Id.* at 108. Weaver told Sergeant Hosking, "I can't believe I'd do something like that," and repeatedly stated that because he could not remember what happened, "anything is possible." *Id.* at 108, 110. Weaver also told Sergeant Hosking "that he would like the opportunity to apologize, [and] that he feels bad for everything that's happening." *Id.* at 113. When Sergeant Hosking asked Weaver why he would apologize for something he did not do, Weaver responded that "he wants things to be right." *Id.* Sergeant Hosking told Weaver that he would allow him an opportunity to apologize if Weaver "came completely clean," but Weaver repeated that "anything was possible [and] he doesn't remember." *Id.* Weaver outright denied sexually abusing any other victims. *Id.* at 113-14. Weaver did not testify at trial.

During closing argument, the prosecutor recounted Sergeant Hosking's testimony about his interview with Weaver. The prosecutor then told the jury, "People who don't sexually abuse children don't come around saying anything is possible. They say, no, end of conversation. He can't even deny it. He can't

tell you that he's not guilty. He's sitting here saying anything is possible." N.T., 8/31/18, at 40-41. Defense counsel objected to the prosecutor's remarks, arguing, "there was a little bit of a burden shifting in her closing there, when she said he's here and he can't deny it, he's sitting right here." *Id.* at 49. The trial court construed the objection as a request for a mistrial, and denied it.

The jury found Weaver guilty of the above charges relating to his niece, and not guilty of the charges relating to his nephew. The court ordered Weaver to undergo assessment by the Sex Offender Assessment Board ("SOAB") to determine if he is a Sexually Violent Predator ("SVP") as defined by the Sex Offender Registration and Notification Act ("SORNA"). Weaver made a motion to bar the SVP assessment and any registration under SORNA. Weaver argued that because his offenses occurred before SORNA's effective date, application of SORNA to his case would be an *ex post facto* violation.

The trial court concluded that the SVP motion was moot because the SOAB had found that Weaver did not meet the requirements. *See* Order, 3/21/19, at 1. However, the court granted Weaver's motion as to registration under SORNA. *Id.* The court determined that Weaver was nonetheless subject to lifetime registration under a prior registration law, Megan's Law, and provided Weaver notification of his registration requirements under that law.[3]

---

[3] The notification reflects registration requirements pursuant to "42 Pa.C.S.A. § 9795.3 et. seq." *See* Notification of Registration Requirements, 4/26/19, at 1.

- 4 -

The court imposed an aggregate sentence of five to 10 years in prison, and Weaver appealed.

Weaver presents the following issues on appeal:

A. Whether the evidence presented by the Commonwealth was insufficient to prove beyond a reasonable doubt that [Weaver] committed the offense of Aggravated Indecent Assault – Less than 13 Years of Age, where the evidence did not establish that [Weaver] penetrated the genitals or anus of the victim?

B. Whether the trial court erred by not granting a mistrial when the Commonwealth violated [Weaver's] right against self-incrimination under the Fifth Amendment of the United States Constitution, Article I, Section 9 of the Pennsylvania Constitution and 42 Pa. C.S.A. §[ ]5941(a)?

C. Whether the trial court erred by Ordering that [Weaver] must register under Megan's Law II, Act 18 of 2000, 200 Pa. ALS 18, S.B. 380, where that Act expired December 20, 2012?

Weaver's Br. at 3.

## I. Sufficiency of the Evidence

Weaver argues the evidence was insufficient to prove Aggravated Indecent Assault – Victim Less than 13 because the victim did not testify to penetration. Weaver points to certain passages of the victim's testimony in which she said Weaver put his hand down her pants "and was touching the skin, the skin on my vagina," and "was just rubbing." **See** Weaver's Br. at 15 (quoting N.T., 8/29/19, at 178). Weaver also highlights that the victim testified that where Weaver touched her was "not like inside," **id.** (quoting N.T., 8/29/19, at 179), and that she similarly told the forensic interviewer at

the Children's Resource Center that where Weaver touched her was "on skin" and "on top," *id.* at 16 (quoting Commonwealth's Trial Ex. 4).

When considering a challenge to the sufficiency of the evidence, "we must determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crime charged is established beyond a reasonable doubt." ***Commonwealth v. Green***, 204 A.3d 469, 484 (Pa.Super. 2019) (citing ***Commonwealth v. Dale***, 836 A.2d 150, 152 (Pa.Super. 2003)). The Commonwealth may carry its burden of proof entirely through circumstantial evidence, *id.* at 484-85, and the evidence "need not preclude every possibility of innocence," ***see Commonwealth v. Knox***, 219 A.3d 186, 195 (Pa.Super. 2019), *appeal denied*, 228 A.3d 256 (Pa. 2020). In reviewing the sufficiency of the evidence, we will not substitute our judgment for that of the factfinder, who is free to believe all, some, or none of the evidence. ***Id.***

A person commits the offense of Aggravated Indecent Assault – Victim Less than 13 if the person engages "in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body," and the complainant is less than 13 years of age. 18 Pa.C.S.A. § 3125(a)(7). "[T]he term 'penetration, however slight' is not limited to penetration of the vagina; entrance in the labia is sufficient." ***Commonwealth v. Hunzer***, 868 A.2d 498, 505-06 (Pa.Super. 2005).

While the victim here testified that Weaver put his hands "on top" of her vagina, and was not "inside" the vagina, she also testified that where he put his hands was not "outside" the vagina, but that Weaver rubbed "in between the two bumps" of her vagina. N.T, 8/29/18, at 179. These statements were sufficient to support a finding that Weaver digitally penetrated the victim's labia, and any inconsistency was for the jury to resolve. Weaver is due no relief on this issue.

## II. Motion for Mistrial

Weaver argues the prosecutor violated his right against self-incrimination by saying to the jury, during closing argument, "He can't tell you that he's not guilty. He's sitting here saying anything is possible." Weaver's Br. at 19 (quoting N.T., 8/31/18, at 40-41). The prosecutor made these remarks after recapitulating that Weaver had told Sergeant Hosking that "anything is possible" in relation to the allegations of abuse, because he could not remember. However, Weaver argues, the prosecutor's use of "sitting *here*" and "can't tell *you*" (emphasis added) impermissibly highlighted to the jury that Weaver had not taken the stand at trial. He further argues that even if the prosecutor's comments related only to Weaver's statements to the police, a prosecutor may not argue that the defendant maintained silence during a police interview.

Weaver contends that the court's overruling of his objection was not harmless, because "the properly admitted and uncontradicted evidence of guilt" was not "so overwhelming and the prejudicial of the error . . . so

- 7 -

insignificant by comparison that the error could not have contributed to the verdict." Weaver's Br. at 23 (quoting ***Commonwealth v. Rodriguez***, 626 A.2d 141, 144 (Pa. 1993)). Weaver points out that there was no corroborating eye-witness testimony, medical evidence, DNA, or confession, and the jury did not convict Weaver on all charges.

In its opinion, the trial court explained that it overruled the objection because, when viewed in context, the Commonwealth was not raising Weaver's "silence" during the course of the investigation or at trial, but was emphasizing what Weaver told the police officer – that he did not know whether the allegations were true, because he could not remember. Tr. Ct. Op., 4/28/19, at 14-16. The court also found that Weaver "failed to establish that the comments in question were of such a degree so as to prejudice the jury forming in their minds fixed bias and hostility toward the defendant so that they would not weigh the evidence objectively and render a true verdict." ***Id.*** at 16. In addition, the court pointed out that it had instructed the jury both before trial started and before closing arguments that statements by counsel were not evidence, and twice told the jury – once at the beginning of trial, once after closing arguments – that it could not consider Weaver's silence against him. ***Id.*** at 16-18.

"A trial court may grant a mistrial only 'where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.'" ***Commonwealth v. Wright***, 961 A.2d 119, 142

(Pa. 2008) (quoting **Commonwealth v. Simpson**, 754 A.2d 1264, 1272 (Pa. 2000)). We review the denial of a motion for a mistrial for an abuse of the trial court's discretion. **Id.**

"As a general rule, any comment that the prosecuting attorney makes regarding a defendant's election not to testify is a violation of the defendant's right against self incrimination[.]" **Commonwealth v. Trivigno**, 750 A.2d 243, 248 (Pa. 2000).[4] A prosecutor may therefore not employ language "intended to create for the jury an adverse inference from the failure of the defendant to testify." **Wright**, 961 A.2d at 142. We have previously acknowledged that "[t]here is a fine line between vigorously arguing the evidence and drawing attention to [a defendant's] decision not to testify." **Id.** at 143.

In this case, we agree with the trial court that the prosecutor did not comment on Weaver's decision not to testify. Rather, in context, the remark is most naturally taken as a comment on Weaver's equivocal responses to police questioning – his repeated statements that he could not remember and "anything is possible." Immediately after reviewing those responses for the jury, the prosecutor argued, "He can't tell you that he's not guilty. He's sitting here saying anything is possible." N.T., 8/31/18, at 40-41. The most natural

---

[4] The right against self-incrimination is protected by the Fifth Amendment to the United States Constitution, and Article I, Section 9 of the Pennsylvania Constitution. **Commonwealth v. Molina**, 33 A.3d 51, 57 (Pa.Super. 2011) (*en banc*).

understanding of that remark, in context, was as a comment on Weaver's statements to police, not his silence at trial or during police interviews.

Moreover, even assuming the remark was improper, any error in denying a mistrial was harmless. "[N]ot every reference to a defendant's failure to testify automatically requires a new trial; the verdict can still be sustained if the error was harmless." *Wright*, 961 A.2d at 143. An error is harmless if we are "convinced beyond a reasonable doubt that the error could not have contributed to the verdict." *Molina*, 33 A.3d at 67 (quoting *Commonwealth v. Nolen*, 634 A.2d 192, 196 (Pa. 1993)). In making this determination, we are guided by the following inquiries:

> (1) whether the error was prejudicial to the defendant or if prejudicial, whether the prejudice was *de minimis*;
>
> (2) whether the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or
>
> (3) whether the evidence of guilt was so overwhelming as established by properly admitted and uncontradicted evidence that the prejudicial effect of the error was so insignificant by comparison to the verdict.

*Id.* (quoting *Nolen*, 634 A.2d at 196).

Moreover, the court can cure an improper reference to a defendant's silence by issuing a proper cautionary instruction. The adequacy of the cautionary instruction depends on "the nature of the reference, how it was elicited, whether it was exploited by the district attorney, and the promptness and adequacy of the cautionary instruction." *Commonwealth v. Boone*, 862 A.2d 639, 646 (Pa.Super. 2004).

Here, the prosecutor's remark was not lengthy and not a clear comment on Weaver's silence at trial. Furthermore, the court twice instructed the jury not to consider Weaver's silence at trial as evidence of guilt. On the facts of this case and the record before us, we find any error in denying a mistrial harmless beyond a reasonable doubt.

### III. Registration Requirements

Weaver's final issue involves his registration as a sex offender. By way of background, SORNA took effect on December 20, 2012, the day Megan's Law expired. **See** 42 Pa.C.S.A. §§ 9799.10-9799.41. In 2017, the Pennsylvania Supreme Court held that SORNA is punitive in effect, and therefore retroactive application of SORNA to an offender whose applicable offenses occurred before SORNA's effective date violates the *ex post facto* clauses. **See Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017). In response, the legislature twice amended SORNA in 2018. Relevant here, the General Assembly added Subchapter I to the Sentencing Code, which it intended be applied to those offenders who committed offenses prior to December 20, 2012, SORNA's effective date.[5]

Following his convictions, Weaver argued to the trial court that the amendments to SORNA do not pass constitutional muster, and his registration under Subchapter I would still be an *ex post facto* violation. The trial court agreed, and provided Weaver notification that he would be subject to

---

[5] The amended version of SORNA, with the 2018 amendments, is sometimes referred to as "SORNA II."

- 11 -

registration under Megan's Law. Weaver argues that this was error, as Megan's Law expired in 2012. He further contends that he should not be subject to registration under Subchapter I, as it is punitive and its application would violate the *ex post facto* clauses of the state and federal constitutions.

We agree that the court erred in providing notification that upon Weaver's release from prison, he would be subject to registration under Megan's Law, as it is expired. **See** 42 Pa.C.S.A. § 9799.41 (providing that the Megan's Law statutes, including 42 Pa.C.S.A. § 9795.3, "shall expire on December 20, 2012"). However, Weaver's issue regarding the applicability of SORNA to his case has since been settled, as our Supreme Court recently held that Subchapter I does not constitute criminal punishment, and its application will not support *ex post facto* claims. **See Commonwealth v. Lacombe**, --- A.3d ----, No. 35 MAP 2018, 2020 WL 4148262 (Pa. July 21, 2020). We therefore remand for the court to provide new notification of Weaver's registration requirements consistent with current law.

Judgment of sentence vacated as to notification of registration requirements. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/1/2020

- 12 -