680 A.2d 839

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert C. BOLUS, Appellant.**

Supreme Court of Pennsylvania.

Argued Dec. 6, 1995.

Decided July 23, 1996.

Gregory H. Chelak, Milford, for Appellant.

Michael Barrasse, William P. O'Malley, Scranton, for Appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY and CASTILLE, JJ.

## *OPINION*

NIX, Chief Justice.

Appellant, Robert C. Bolus, appeals from the Order of the Superior Court which affirmed the judgment of sentence of the Court of Common Pleas of Lackawanna County. A jury convicted Appellant of two counts of receiving stolen property,[1] tampering with or fabricating physical evidence,[2] and criminal solicitation,[3] all in connection with his possession of a stolen tractor-trailer rig and an earth moving machine ("front-end loader") that was transported on the trailer. This Court granted Appellant's Petition for Allowance of Appeal limited to the question of whether Appellant's trial counsel was ineffective for failing to object to questions concerning Appellant's pre-arrest failure to cooperate in the police investigation. For the reasons that follow, we hold that trial counsel was not ineffective.

Appellant owned a towing service near Interstate 80 close to Scranton. In October of 1991, an individual named Leonard Brush approached Appellant regarding a tractor-trailer that he had seen stored on Appellant's towing service lot, unused for over one year. Appellant permitted Brush, who was interested in purchasing the tractor-trailer, to inspect it. Unbeknownst to Appellant, during the inspection, Brush obtained

1. 18 Pa.C.S. § 3925.
2. 18 Pa.C.S. § 4910.
3. 18 Pa.C.S. § 902.

the tractor-trailer's vehicle identification numbers ("V.I.N.s"). Appellant told Brush that the tractor-trailer had been abandoned and that, although he did not currently have title to it, he was in the process of obtaining title via a mechanics lien. Brush, who had previously been convicted of receiving stolen property, decided to proceed in a cautious fashion. Accordingly, Brush hired a private investigator to trace the V.I.N.s.

The investigation revealed that the tractor-trailer had been reported stolen property from a storage yard in Flushing, New York, in June, 1989. The police then contacted the inquiring party and learned that the tractor-trailer was now located in Appellant's towing service yard. The police then proceeded to Appellant's storage yard and when Appellant was not present, they verified the tractor-trailer's V.I.N.s.

After confirming that the tractor-trailer was in fact stolen, the police questioned Appellant regarding his possession of the stolen property. Appellant initially told the police that the tractor-trailer had broken down on Interstate 80 and that he towed it in pursuant to a request by the police. According to Appellant, he then replaced a defective fuel pump and attempted unsuccessfully to contact the vehicle's owner. Because the owner never returned his phone calls or paid the towing, repair, and subsequent storage bills, Appellant had retained possession of the tractor-trailer and was waiting to obtain title via a mechanics's lien.

The police did not believe Appellant's account of the events. The police initially became suspicious when they were unable to find any record of a request for a tow on the interstate for the vehicle in question, which would ordinarily be contained in a police log. In addition, they were dissatisfied with Appellant's explanation that because he recently moved his office, he was unable to locate either the repair bill or the telephone number of the owner. Finally, the police found Appellant's explanation of how he was trying to obtain title unbelievable in light of the difference in value that existed between the small amount of his bills and the large value of the vehicle.

Based upon Appellant's deficient explanation, the police seized the tractor-trailer. As they were removing it, the police asked Appellant if he knew anything about the front-end loader which had been stolen along with the tractor-trailer. Appellant denied having any knowledge regarding the whereabouts of the front-end loader, and then, on advice of counsel, refused to cooperate further with police.

The next morning, October 30, 1990, the police stopped a tractor-trailer, owned by Appellant, hauling a front-end loader toward the interstate highway. The police later determined that the front-end loader was the one stolen along with the tractor-trailer they had seized from Appellant the day before. On January 1, 1991, Appellant was arrested and subsequently brought to trial. At trial, Appellant testified to a different version of events from that which he had previously told the police. Appellant testified that he had purchased the front-end loader. In order to substantiate this defense, Appellant produced cancelled checks purportedly paid to an individual named Willie Thomson. Moreover, Appellant denied any knowledge that the machine was stolen.

During the trial, Petitioner was cross-examined concerning the checks made out to Willie Thomson, the person from whom Appellant testified that he had purchased the equipment:

Q. [By the Assistant District Attorney] But Willie Thomson you don't know.

A. [By Appellant] No I never said I don't know—Willie Thomson is a white man.

Q. Oh, Willie Thomson is a white man.

A. Yes, sir.

Q. Okay. Do you think maybe that if you told the police officer last November, when this happened, "call Willie Thomson, he sold it to me," do you think maybe the police officer would be able to pick up the phone and call Willie Thomson to see if the truth was there?

A. I don't know what the police officer would have done.

Q. But you didn't tell him, did you, so he couldn't call Willie Thomson because he didn't know anything about Willie Thomson.

A. The state police had all my records. Sgt. Scales was notified to contact my attorney, and he could have really discussed it with him. He knew I was represented by counsel.

Q. Mr. Bolus, the state police didn't get your records until late January.

A. That's correct.

Q. I'm, talking about November, before anybody arrested you, when you were trying to get your tractor and trailer back, which you so deeply and dearly needed. Sir, you never told that man that you bought it from Willie Thomson, did you?

A. No, sir, I did not.

Q. And you didn't tell that man, who was trying to find out about this, anything about Captain's Inc., either did you?

A. I did not tell that man anything because I did not trust that man.

. . . .

Q. And he asked you up there, "do you have a bill of sale?" He asked you.

A. And I told him that I was represented by counsel, and that if I had any information that he needed, to contact my attorney.

Q. Did you tell your attorney, "These guys want to know if I own this machine so I can get my tractor and trailer?"

A. My attorney was fully aware of it.

Q. And he had this proof here, too, didn't he?

A. That's right.

Q. Three checks, one dated June 12th, one dated June 15th and one dated June 22nd [which were not then turned over to police.]

A. That's correct, and I was advised by my attorney that there was no doubt in anyone's mind that Sgt. Scales was

going to arrest me, and to keep that information, that it could be presented in a court of law, and to a jury that's seated here today, in my defense. The state police were out to get me, we had numerous problems with them, and there was no way I trusted that man sitting there.

(R.R. at 153a–156a).

A jury convicted Appellant of two counts of receiving stolen property, tampering with physical evidence, and criminal solicitation, all in connection with his possession of a stolen tractor-trailer rig and the front-end loader that was transported on the rig. After the trial court denied post-verdict motions, Appellant appealed to the Superior Court. In a memorandum opinion, the Superior Court affirmed the judgment of sentence. It held that Appellant's failure to cooperate, like flight, was evidence tending to establish guilt. *Commonwealth v. Bolus,* No. 3546 Philadelphia 1992, slip op. at 13, 432 Pa.Super. 682, 635 A.2d 200 (Aug. 19, 1993). The Superior Court concluded that the federal Constitution did not prohibit the prosecutor from engaging in this line of questioning because during the time period in which the prosecutor had referred to Appellant's silence, Appellant had not yet become the focus of a criminal investigation or placed under arrest. *Id.* This appeal followed.

■ The standard for establishing ineffective assistance of counsel is a three-fold inquiry. In order to prevail on such a claim, it must be shown: (1) that the claim has arguable merit, (2) that there was no reasonable basis for counsel's action or inaction, and (3) that the defendant was prejudiced in such a way that the outcome of the trial could have reasonably been different. *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987).

Appellant claims that his trial counsel was ineffective because counsel failed to object to the prosecutor's line of questioning regarding Appellant's pre-arrest refusal to respond to police questions or produce exculpatory documents which he introduced at trial. Appellant proffers two distinct arguments as to why this omission constituted ineffective

assistance of counsel. First, Appellant contends that the prosecutor's line of questioning impermissibly made mention of his silence, thus violating the Pennsylvania Constitution as interpreted by this Court in *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537 (1982). Second, Appellant maintains that even if this line of questioning did not rise to the level of a constitutional violation, it nonetheless was not relevant and/or more prejudicial than probative.

Turning to Appellant's first claim of error, Appellant asserts that the prosecutor's line of questioning and his subsequent argument based on that testimony were improper under this Court's pronouncement in *Commonwealth v. Turner, supra.* In *Turner*, this Court disallowed the use of pre-Miranda warning silence to impeach a defendant's testimony. There we said,

> [t]he prejudice to the defendant resulting from reference to his silence is substantial. While it is efficacious for the Commonwealth to attempt to uncover a fabricated version of events, in light of the "insolubly ambiguous" nature of silence on the part of the accused, we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant allowance of any reference at trial to the silence. Accordingly, the Commonwealth must seek to impeach a defendant's relation of events by reference only to inconsistencies as they factually exist, not to the purported inconsistency between *silence at arrest* and testimony at trial. *Silence at the time of arrest* may become a factual inconsistency in the face of an assertion by the accused while testifying at trial that he related this version to the police at the time of arrest when in fact he remained silent. Absent such an assertion, the reference by the prosecutor to previous silence is impermissible and reversible error.

*Id.* at 583, 454 A.2d at 539–40 (citations omitted) (emphasis added).

We find *Turner*, however, to be distinguishable from the instant matter. In *Turner*, the period of silence which was referenced by the prosecution occurred after the defendant's arrest, but prior to the time the defendant was given his

Miranda warnings. In the instant matter, the prosecutor questioned Appellant regarding his silence which occurred months before he was arrested. Because we conclude that *Turner* is distinguishable from the instant matter, this Court is called upon for the first time to decide whether a prosecutor may refer to a criminal defendant's pre-arrest silence.

We find the United States Supreme Court's treatment of this issue in *Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), to be both instructive and persuasive. In *Jenkins,* the Court held that the use of an accused's pre-arrest silence to impeach his credibility on cross-examination did not violate either the Fifth or Fourteenth Amendments. *Id.* The defendant in *Jenkins* was tried in state court for first-degree murder. At trial he testified that he acted in self-defense. On cross-examination, the prosecution sought to impeach the credibility of the defendant by questioning him about the reason why he had not come forward immediately and surrendered himself to the authorities and informed them at that time that he had acted in self-defense. The defendant was ultimately convicted of voluntary manslaughter and, after his state court appeals were exhausted, he sought habeas corpus relief.

The Supreme Court affirmed the denial of habeas corpus relief, concluding that neither the Fifth nor Fourteenth Amendment precluded the use of defendant's pre-arrest silence to impeach a criminal defendant's credibility. The Court reasoned that the Fifth Amendment guarantees an accused the right to remain silent at his trial and prevents a prosecutor from commenting upon such silence. *Id.* at 231, 100 S.Ct. at 2125, 65 L.Ed.2d at 92. However, when a criminal defendant waives that right and elects to testify himself, he is subject to cross-examination impeaching his credibility just like any other witness. *Id.* The Court relied on its prior decision in *Raffel v. United States,* 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926), which explicitly rejected the notion that the possibility of impeachment by prior silence is an impermissible burden on the exercise of Fifth Amendment rights.

Appellant correctly argues that although the *Jenkins* Court concluded that a criminal defendant may be impeached by his prior silence, that decision does not compel this Court to similarly construe our state Constitution in the same fashion. The relevant language of our state Constitution provides:

> *In all criminal prosecutions* the accused hath a right to be heard by himself and counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; *he cannot be compelled to give evidence against himself,* nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.[4]

Pa. Const. Art. 1, § 9 (footnote added) (emphasis added).

Although textual differences do exist between the relevant language found in the United States Constitution and the Pennsylvania Constitution, Appellant fails to proffer an argument that these textual differences require this Court to interpret Article 1, section 9 as affording Appellant greater constitutional protection than that which he is entitled under the Fifth amendment. He likewise fails to advance any other reason to depart from the federal jurisprudence on this issue. Rather, Appellant relies solely on this Court's decision in *Turner, supra,* for the proposition that a prosecutor may never question a criminal defendant regarding his silence.

---

**4.** *Compare* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; *nor shall be compelled in any criminal case to be a witness against himself;* nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.") (emphasis added).

The Commonwealth, on the other hand, distinguishes *Turner* as creating a prohibition only to questioning and referencing post-arrest silence. In addition, in its brief, the Commonwealth has adopted that portion of the Superior Court opinion which held that until a criminal defendant has become the focus of a criminal investigation or placed under arrest, the Commonwealth is free to question and comment on Appellant's silence.

As we have previously stated, we find *Turner* to be distinguishable from the instant matter and, as such, find that Appellant has failed to convince this Court that this Commonwealth's Constitution proscribes the type of conduct employed by the prosecutor in this case.[5] We find the reasoning of the United States Supreme Court's decision in *Jenkins v. Anderson, supra,* to be compelling, and hold that when a criminal defendant waives his right to remain silent and testifies at his own trial, neither the United States nor the Pennsylvania Constitution prohibit a prosecutor from impeaching a defendant's credibility by referring to his pre-arrest silence. Because in the instant matter Appellant had testified at his trial, he has waived any right to complain that the prosecutor had impermissibly commented on his pre-arrest silence. Accordingly, Appellant has failed to satisfy the first prong of *Pierce, i.e.,* that the claim has arguable merit.[6]

5. We leave for another day the question of whether a prosecutor may introduce evidence of a criminal defendant's pre-arrest silence when the defendant exercises his constitutional right to remain silent and does not testify at his own trial. Thus, we need not address the rationale espoused by the Superior Court and adopted by the Commonwealth that the rights guaranteed by Article 1, section 9 of the Pennsylvania Constitution attach only when a criminal defendant is the focus of a criminal investigation or under investigation.

6. Appellant also argues that the prosecutor's line of questioning resulted in an improper shifting of the burden of proof. Because we conclude that the prosecutor correctly used this type of impeachment evidence, we find this argument to be meritless.

Additionally, Appellant argues that "counsel's failure to object to the prosecutor's tactic of denigrating defense witness[es] for failure to voluntarily cooperate with the police also prejudiced the defendant." Brief for Appellant at 33. We refuse to consider Appellant's argument in light of the fact that Appellant's Petition for Allowance of Appeal was

■ Appellant's second claim of ineffective assistance of counsel was that trial counsel failed to object to the contested line of questioning because it was both not relevant and its prejudicial impact outweighed its probative value. Assuming *arguendo* that Appellant has satisfied the first two prongs of the *Pierce* test, *i.e.,* the claim had arguable merit and Appellant's trial counsel had no reasonable basis for his conduct, Appellant nevertheless has failed to meet his burden of proof with respect to the final prong. Specifically, Appellant has failed to demonstrate that he was prejudiced in such a way that the outcome of the trial could have reasonably been different. *Commonwealth v. Pierce,* 515 Pa. 153, 158–59, 527 A.2d 973, 975 (1987). The only argument Appellant advances with respect to this issue is that the facts in this case are precisely like the facts in *Commonwealth v. Turner, supra,* and therefore the error cannot be considered harmless because this Court held in *Turner* that it was improper to refer to the accused's pre-Miranda silence. However, as we have previously stated, we find *Turner* to be distinguishable from the instant matter and therefore inapplicable. Because Appellant has failed to enlighten this Court as to how he was prejudiced in such a way that the outcome of the trial could have reasonably been different, Appellant's claim for relief must fail.

Accordingly, the Order of the Superior Court is hereby affirmed.

ZAPPALA and CAPPY, JJ., concur in the result.

granted limited to the question concerning his pre-arrest failure to cooperate.