2 A.3d 1244 (2010)
COMMONWEALTH of Pennsylvania, Appellee
v.
Michael MOLINA, Appellant.
No. 1948 WDA 2007.
Superior Court of Pennsylvania.
Argued February 24, 2010.
Filed August 13, 2010.
*1246 Thomas N. Farrell, Pittsburgh, for appellant.
Michael W. Streily, Deputy District Attorney, Francesco L. Nepa, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.
BEFORE: SHOGAN, COLVILLE[*] and CLELAND[*], JJ.
OPINION BY CLELAND, J.
Appellant, Michael Molina (Molina), appeals the judgment of sentence of the Court of Common Pleas of Allegheny County entered on March 15, 2007. The issue is whether the Commonwealth may urge the jury to use a non-testifying defendant's pre-arrest silence as evidence of his guilt. We conclude it cannot. Accordingly, we reverse the judgment of sentence and remand for a new trial.
*1247 The trial court summarized the underlying facts and the procedural history as follows:
On September 7, 2003, Melissa Snodgrass, (hereinafter referred to as "Snodgrass"), was twenty-one years old, single and living with her mother and her pet dog, Baby, in the Northside Section of the City of Pittsburgh. On that day at approximately 11:00 a.m., she left her residence with her dog and told her mother she was off to do some errands. That was the last time any individual saw her alive. On March 9, 2004, her mummified remains were found in the basement of a house located at 1104 Spring Garden Avenue, by two individuals who had been hired to clean up that building.
Pittsburgh Homicide Detectives, during the course of their investigation, determined that Michael Benintend, (hereinafter referred to as "Benintend"), also known as "White Mike", was residing in that residence at the time of Snodgrass' disappearance. Benintend was arrested by police in Key West, Florida, on a warrant charging him with criminal homicide, unlawful restraint, aggravated assault and criminal conspiracy. During his second interview with a Pittsburgh Homicide Detective, Benintend told him that [Molina], had viciously beaten Snodgrass and he presumed that Molina had killed her.
Molina was charged with criminal homicide, unlawful restraint, aggravated assault, simple assault and criminal conspiracy. Following a jury trial he was convicted of third degree murder, unlawful restraint, aggravated assault and simple assault. Molina's motion for judgment of acquittal as to the charge of criminal conspiracy to commit criminal homicide was granted. A presentence report was ordered and on March 15, 2007, Molina was sentenced to two hundred forty to four hundred eighty months on the charge of third degree murder, and a consecutive period of incarceration of forty-eight to ninety-six months on the charges of aggravated assault, unlawful restraint and simple assault.
Trial Court Opinion (T.C.O.), 4/15/09, at 2-3.
This timely appeal followed. Both the trial court and Molina complied with Pa. R.A.P. 1925.[1]
This appeal concerns the testimony of Detective Stacey Hawthorne-Bey of the Missing Persons Unit of the Pittsburgh Police Department and the prosecutor's comment during closing argument about her testimony. Specifically, Molina raised the following issue: "Whether the trial court erred in [not] sustaining the objection when the prosecutor improperly commented on [Molina]'s silence?" Appellant's Brief at 4.
Detective Hawthorne-Bey testified that while investigating Snodgrass' disappearance she spoke to a man known as "Spinneweber." N.T. Trial, 12/18-12/20/06, Vol. II, at 483. Spinneweber told her he saw Snodgrass getting into Molina's car on September 3, 2003. Id. Armed with this information, Detective Hawthorne-Bey went to Molina's address. Id. at 480, 483. The detective talked to Molina's girlfriend who was staying there. Id. Molina, however, was no longer living at that address, according to Molina's girlfriend. Id. Detective Hawthorne-Bey told Molina's girlfriend she was investigating the Snodgrass' disappearance. Id. at 483-84. The detective then asked Molina's girlfriend to *1248 tell Molina to call her back "ASAP" because she needed to talk to him about the matter. Id. at 480. See also id. at 484. Detective Hawthorne-Bey's testimony then continued as follows:
[Commonwealth:] And did [Molina], in fact, get back to you at some point after that?
[Detective Hawthorne-Bey:] Yes, That same day, actually.
[Commonwealth:] I'm sorry?
[Detective Hawthorne-Bey:] That same day.
[Commonwealth:] And did you question him during that contact with him?
[Detective Hawthorne-Bey:] I asked himwell, before I could even ask him if he was aware of [Snodgrass] being missing, he stated to me that there werethat he didn't know where she was. It was out on the street that someone said that he was involved in her being missing and it wasn't him.
[Commonwealth:] And did you ask him or did he state to you?
[Detective Hawthorne-Bey:] He stated this to me.
[Commonwealth:] Without even you asking him. Is that what you're saying?
[Detective Hawthorne-Bey:] Right, without me even asking him that.
[Commonwealth:] Did [Molina] state to you, whether prompted by a question or spontaneously, I guess you might say, as to when he had last seen this young lady, [Snodgrass]?
[Detective Hawthorne-Bey:] Yes. Well, after the statement, I asked him, "When was the last time that you had seen [Snodgrass]?"
And first he said, "About a year and a half ago."
And I said, "When was the last time you [had] seen her?"
And then he stated, "Three months ago."
[Commonwealth:] All right. That's all within the span of a single conversation that these things happened, ma'am?
[Detective Hawthorne-Bey:] Yes, yes.
[Commonwealth:] And was it one right after the other? I mean
[Detective Hawthorne-Bey:] Yes. After he stated that, I asked him if he could come into our office and sit down and talk with me about the case, and he refused. He said he refused to come in.
[Commonwealth:] So this contact that you had with him was over the telephone. Is that what you're saying?
[Detective Hawthorne-Bey:] Yes, it was over the telephone.
Id. at 480-81.
At closing argument, counsel for the Commonwealth commented on Detective Hawthorne-Bey's testimony as follows:
Look also at what happened in terms of the police investigation in this matter. Three days after [Snodgrass] goes missing, three days after she goes missing, detectives are already knocking on [Molina]'s door because of something they heard, maybe he was holding this person against [her] will, and he calls the police back and is very defensive. I mean, before a question's even asked, he denies any knowledge or any involvement with this young lady. He makes contradictory statements to the police about when's the last time that he saw her. First he says, "I saw her a year and a half ago." Then he says, "I saw her three months ago." But most telling, I think, is the fact that the [detective] invited him. "Well, come on down and talk to us. We want to ask you some more questions about this incident, your knowledge of this young lady," especially because he made these contradictory *1249 statements. And what happens? Nothing happens. He refuses to cooperate with the Missing Persons detectives. And why?
Id. at 579-80.
Upon objection from defense counsel, both counsel approached the bench. Id. at 580. After discussing the matter with the trial court, the trial court overruled Molina's objection and refused his request for a curative instruction to the jury. Id. at 580-81. The Commonwealth then resumed and argued to the jury: "Factor that in when you're making an important decision in this case as well." Id. at 581.
Molina argues the trial court erred in overruling his objection to the Commonwealth's argument that the jury should consider Molina's refusal to go to the police station to discuss Snodgrass' disappearance as evidence of his guilt. Molina avers the trial court's error violated his right to remain silent and warrants a new trial.[2]
The Commonwealth contends neither the testimony nor the comment burdened Molina's right to remain silent because neither the United States Supreme Court nor the Supreme Court of Pennsylvania has recognized a protected constitutional interest in the decision to remain silent in a pre-arrest, pre-Miranda[3] situation. Appellee's Brief at 19-20 (citing Commonwealth v. DiNicola, 581 Pa. 550, 866 A.2d 329 (2005) and Commonwealth v. Bolus, 545 Pa. 103, 680 A.2d 839 (1996)).
The Commonwealth also argues Molina waived this claim because he failed to object to Detective Hawthorne-Bey's testimony when she originally testified Molina refused to go to the police station to discuss the case. The Commonwealth argues that objecting to the Commonwealth's comment on Molina's silence during the summation was not a contemporaneous objection and the claim is waived.
In its 1925 opinion the trial court noted Molina did not object to Detective Hawthorne-Bey's testimony and found the prosecutor's comments "did nothing more than show the extent and focus of the police investigation with regard to Snodgrass' disappearance" and "provide information to the jury which would allow them to assess the credibility of Molina's `testimony.'" T.C.O. at 30.[4] The trial court, relying on DiNicola, Bolus and Commonwealth v. Lettau, 955 A.2d 360 (Pa.Super.2008),[5] concluded Molina was not prejudiced *1250 from the Commonwealth's comment such as to require a mistrial or sustaining Molina's objection to the comment. T.C.O. at 16-31.
We must first determine the purpose for which the evidence was offered and admitted. See DiNicola, 581 Pa. at 564, 866 A.2d at 337-38 (Castille, J., concurring). Because Molina did not testify at trial, the Commonwealth's purpose in eliciting the testimony about his silence from Detective Hawthorne-Bey could not have been to impeach Molina's credibility. Additionally, there is no indication the detective's testimony was necessary to respond to any defense tactic of portraying Molina as cooperative, or to respond to any defense suggestion the police did not fully investigate the case. The evidence was originally offered, as the trial court noted, only to "show the extent and focus of the police investigation with regard to Snodgrass' disappearance." T.C.O. at 30. In its closing, however, the Commonwealth argued the jury should consider Molina's refusal to discuss the matter at the police station as evidence Molina was guilty.
With this background, we first address whether the claim is properly before us. As noted, the Commonwealth argues Molina's objection during closing argument was too late to preserve an objection to the detective's testimony and the claim is waived. Molina, on the other hand, focuses on the Commonwealth's argument, not the detective's testimony, and asserts the impropriety of the argument is of such a magnitude that it resulted in a violation of his constitutionally protected right to remain silent.
The detective's testimony was originally offered for one purpose (extent and focus of police investigation relating to the victim's disappearance) but later used for a different purpose (evidence of Molina's guilt). While Molina did not object to the testimony for the purposes for which it was originally offered, Molina did promptly object when the Commonwealth argued to the jury that the testimony should be used as evidence of guilt. We conclude, therefore, Molina timely objected to the Commonwealth's intended use of the detective's testimony as evidence of his guilt as opposed to its use to explain the police investigation. Therefore, we decline to find waiver.[6]
*1251 In opposing Molina's argument both the trial court and the Commonwealth relied on Bolus and DiNicola. Reliance on these cases, however, is misplaced. Bolus involved the use of a defendant's pre-arrest silence on cross-examination to impeach his credibility about his cooperation with the police investigation. DiNicola involved the use of a defendant's pre-arrest silence to respond to the defendant's argument the Commonwealth did not fully investigate the case. In both Bolus and DiNicola the defendant testified at his own trial. The case at hand involves the use of out-of-court pre-arrest silence as substantive evidence of guilt against a defendant who did not testify at trial. Molina did not testify so his credibility was not at issue, and he did not raise as a defense the inadequacy of the police investigation. As such, DiNicola and Bolus are inapposite.
As the parties noted, the issue presented here has not been addressed by either the United States Supreme Court or our Supreme Court, and federal circuits and state appellate courts are divided on the question.[7] After considering case law from federal and state appellate courts, we conclude the Commonwealth cannot use a non-testifying defendant's pre-arrest silence to support its contention that the defendant is guilty of the crime charged.
Our Supreme Court in Commonwealth v. Spotz, 582 Pa. 207, 870 A.2d 822 (2005), noted:
In the seminal case of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the U.S. Supreme Court determined that prosecutorial comment at trial on a defendant's post-Miranda silence may violate due process, and that the prosecution generally may not impeach a testifying defendant with the fact of his post-Miranda silence. The Court reasoned that it would be fundamentally unfair and a deprivation of due process to provide Miranda warnings, which imply that silence carries no penalty, and then allow the defendant's post-Miranda silence to be used by the prosecution as impeachment at trial. See Doyle, 426 U.S. at 617-18, 96 S.Ct. at 2244-45. In addition, the Court noted, when silence follows upon issuance of Miranda warnings, it may be a result of an exercise of Miranda rights (rather than, for example, a tacit admission); such silence, therefore, is "insolubly ambiguous." Id. at 617, 96 S.Ct. at 2244. Following Doyle, the High Court held that crossexamination of a testifying defendant as to post-arrest silence does not violate due process where the silence occurred prior to the issuance of Miranda warnings or similar assurances. Fletcher v. Weir, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982). Soon thereafter, however, this Court rejected Fletcher as a matter of Pennsylvania constitutional law in [Turner] reasoning that under Article 1, § 9 of the Pennsylvania Constitution, "the existence of Miranda warnings, or their absence, [does not] affect ... a person's legitimate expectation not to be penalized for exercising the right to remain silent." 454 A.2d at 540. Thus, Turner extended the *1252 temporal coverage of the Doyle restriction to the entire post-arrest period. See also Commonwealth v. DiPietro, 538 Pa. 382, 648 A.2d 777, 779 (1994). Both this Court and the High Court, however, have determined that there is no violation of due process when pre-arrest, pre-Miranda silence is used at trial to impeach a testifying defendant. See Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980); Bolus, 545 Pa. 103, 680 A.2d 839.
Id. at 222-23, 870 A.2d at 830-31.
Specifically, in Turner, our Supreme Court reasoned as follows:
The view of this Court that there exists a strong disposition on the part of lay jurors to view the exercise of the Fifth Amendment privilege as an admission of guilt is well established. See Commonwealth v. Singletary, 478 Pa. 610, 612, 387 A.2d 656, 657 (1978); Commonwealth v. Greco, 465 Pa. 400, 404, 350 A.2d 826, 828 (1976); Commonwealth v. Haideman, 449 Pa. 367, 371, 296 A.2d 765, 767 (1972). In [Haideman], we stated:
"We would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." Walker v. United States [404 F.2d 900, 903 (5th Cir.1968)]. It is clear that "[t]he privilege against self-incrimination would be reduced to a hollow mockery if its exercise could be taken as equivalent either to a confession of guilt or a conclusive presumption of perjury." Slochower v. Board of Higher Ed. of N.Y. [350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956)].

[Haideman, 449 Pa. at 371, 296 A.2d at 767].
The prejudice to the defendant resulting from reference to his silence is substantial. While it is efficacious for the Commonwealth to attempt to uncover a fabricated version of events, in light of the "insolubly ambiguous" nature of silence on the part of the accused, [Doyle, 426 U.S. at 617, 96 S.Ct. 2240], we do not think it sufficiently probative of an inconsistency with his in-court testimony to warrant allowance of any reference at trial to the silence. Accordingly, the Commonwealth must seek to impeach a defendant's relation of events by reference only to inconsistencies as they factually exist, not to the purported inconsistency between silence at arrest and testimony at trial. Silence at the time of arrest may become a factual inconsistency in the face of an assertion by the accused while testifying at trial that he related this version to the police at the time of arrest when in fact he remained silent. [Id. at 619 n. 11, 96 S.Ct. 2240]. Absent such an assertion, the reference by the prosecutor to previous silence is impermissible and reversible error.
Article 1, § 9 of the Pennsylvania Constitution provides that the accused "cannot be compelled to give evidence against himself ...," a right which is parallel to the federal constitutional right under the Fifth Amendment. We do not think that the accused should be protected only where there is governmental inducement of the exercise of the right. We acknowledge that this position is more restrictive than that taken by the United States Supreme Court in [Fletcher]. However, we decline to hold, under the Pennsylvania Constitution, that the existence of Miranda warnings, or their absence, affects a person's legitimate expectation not to be penalized for exercising the right to remain silent. In [Easley], this Court in a footnote stated:
[W]e do not believe any reason exists to differentiate between situations *1253 where the right to remain silent is exercised following warnings and where it is exercised without warnings being given. Whether or not the exercise of the right to remain silent is induced by being advised of it at the time of arrest or is self-motivated by prior knowledge of it by the accused should not limit or extend the effect of exercising the right.

[Easley, 483 Pa. at 341, 396 A.2d at 1201, n. 5]. See also [Singletary, supra].
Turner, 499 Pa. at 582-84, 454 A.2d at 539-40.
It is clear, therefore, under Turner, the "right to remain silent does not come into existence only when a suspect is induced to remain silent by a Miranda warning: `We do not think that the accused should be protected only where there is a government inducement of the exercise of the right [to remain silent].'" Lettau, ___ Pa. at ___, 986 A.2d at 118 (citing Turner, 499 Pa. at 584, 454 A.2d at 540) (brackets in original).
Turner, however, involved post-arrest/pre-Miranda silence used against a testifying defendant. Here, we are dealing with pre-arrest silence used against a non-testifying defendant. As noted, the police were investigating Snodgrass' disappearance. During the investigation, police developed information Molina may have been involved in the victim's disappearance. The investigating officer tried to talk with Molina about the allegations. Molina was not at the address where the officer believed he would be found. The officer left a message with the person who answered the door at that address. Later that day, Molina called the officer back. Over the phone, Molina denied any involvement and refused to go to the police station to talk about the case as the officer requested. The question is whether Molina had a protected right to remain silent and whether it was triggered by the officer's investigation.[8]
Neither the Pennsylvania Supreme Court nor the U.S. Supreme Court has recognized a protected constitutional interest in the decision to remain silent in all of one's interactions with the police. DiNicola, 581 Pa. at 565, 866 A.2d at 338 (Castille, J., concurring).
Similar views are shared by federal circuits such as United States v. Oplinger, 150 F.3d 1061 (9th Cir.1998), overruled on other grounds by United States v. Contreras, 593 F.3d 1135 (9th Cir.2010), United States v. Zanabria, 74 F.3d 590 (5th Cir. 1996), and United States v. Rivera, 944 F.2d 1563 (11th Cir.1991). See Commonwealth's Brief at 23.[9] Based on Justice Stevens' concurring opinion in Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), these courts essentially reasoned the privilege against self-incrimination is irrelevant to a citizen's decision to remain silent when the citizen is under no official compulsion to speak. In Jenkins, Justice Stevens noted:

*1254 The fact that a citizen has a constitutional right to remain silent when he is questioned has no bearing on the probative significance of his silence before he has any contact with the police. We need not hold that every citizen has a duty to report every infraction of law that he witnesses in order to justify the drawing of a reasonable inference from silence in a situation in which the ordinary citizen would normally speak out. When a citizen is under no official compulsion whatever, either to speak or to remain silent, I see no reason why his voluntary decision to do one or the other should raise any issue under the Fifth Amendment. For in determining whether the privilege is applicable, the question is whether petitioner was in a position to have his testimony compelled and then asserted his privilege, not simply whether he was silent. A different view ignores the clear words of the Fifth Amendment.
Jenkins, 447 U.S. at 243-44, 100 S.Ct. 2124 (footnotes omitted) (Stevens, J., concurring).
Under the facts of this case, however, in which the police were specifically investigating whether Molina was involved in Snodgrass' disappearance, Justice Marshall's dissent in Jenkins is more analytically analogous:
[U]nder [Justice Stevens'] view, a person's right not to incriminate himself exists only if the government has already attempted to compel him to do so. If no officials have tried to get the person to speak, he evidently has a duty to incriminate himself, because the reporting of crime is a civic duty and the Fifth Amendment is not applicable since the decision to speak or remain silent is, at that time, "voluntary."
But the prohibition against compelled self-incrimination is another way of expressing the right not to incriminate oneself. After all, the only means of compelling a person to incriminate himself is to penalize him if he does not. Of course the voluntary decision to remain silent in the absence of any official compulsion does not "raise any issue under the Fifth Amendment," since there has been no self-incrimination at all. A voluntary decision to speak also does not implicate the Fifth Amendment because the self-incrimination was not compelled. But to impose a duty to report one's own crime before an official accusation has been made would itself be to compel self-incrimination, thus bringing the Fifth Amendment into play. And, as Griffin v. California, [380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)], makes plain, the Constitution also prohibits the government from burdening the right not to incriminate oneself by penalizing silence. In the present case the violation of the Fifth Amendment occurred not when the defendant remained silent, but when that silence was later used against him at his criminal trial.
Id. at 250 n. 4, 100 S.Ct. 2124 (citations omitted) (Marshall, J., dissenting).
Additionally, as other courts have noted, the reasoning of the Fifth, Ninth and Eleventh Circuits are unpersuasive because:
In Rivera, the Eleventh Circuit cited Jenkins for its broad statement that "[t]he government may comment on a defendant's silence if it occurred prior to the time that he is arrested and given his Miranda warnings." Rivera, 944 F.2d at 1568. Reliance on Jenkins for this proposition is misplaced, as Jenkins merely permitted use of a defendant's pre-arrest silence for impeachment purposes and specifically declined to address the issue of substantive comment on a defendant's pre-arrest silence. *1255 Similarly, in Zanabria, the Fifth Circuit held that the Fifth Amendment did not protect the defendant's pre-arrest silence, but cited no authority to support its holding. See Zanabria, 74 F.3d at 593. Finally, we find the Ninth Circuit's decision in Oplinger distinguishable on its facts. In Oplinger, the defendant remained silent in response to accusations of criminal activity from his job supervisor, prior to any government involvement or investigation. See Oplinger, 150 F.3d at 1064. Therefore, according to the Ninth Circuit, the Fifth Amendment did not protect the defendant's silence because "the government made no effort to compel [the defendant] to speak[.]"
State v. Boston, 191 N.C.App. 637, 663 S.E.2d 886, 896 (2008).[10]
We are also mindful the Fifth Amendment
must be accorded liberal construction in favor of the right it was intended to secure. The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.
Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951) (citations omitted). The United States Supreme Court also added: "To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result." Id. at 486-87, 71 S.Ct. 814.
In Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), the Supreme Court stated:
The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures which the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.

Id. at 444-45, 92 S.Ct. 1653 (footnotes omitted) (emphasis added).
The High Court in Pennsylvania v. Muniz, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990) also stated:
The Self-Incrimination Clause of the Fifth Amendment provides that no "person... shall be compelled in any criminal case to be a witness against himself." Although the text does not delineate the ways in which a person might be made a "witness against himself," cf. Schmerber v. California, [384 U.S. 757, 761-62, n. 6, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)], we have long held that the privilege does not protect a suspect from being compelled by the State to produce "real or physical evidence." Id. [at 764, 86 S.Ct. 1826]. Rather, the privilege "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." Id. [at 761, 86 S.Ct. 1826]. "[I]n order to be testimonial, an accused's communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a `witness' against himself." Doe v. *1256 United States, 487 U.S. 201, [210, 108 S.Ct. 2341, 101 L.Ed.2d 184 (1988)].
Id. at 588-89, 110 S.Ct. 2638 (1990) (footnote omitted).
The High Court then concluded:
We need not explore the outer boundaries of what is "testimonial" today, for our decision flows from the concept's core meaning.[[11]] ... Whatever else it may include, therefore, the definition of "testimonial" evidence articulated in Doe must encompass all responses to questions that, if asked of a sworn suspect during a criminal trial, could place the suspect in the "cruel trilemma." This conclusion is consistent with our recognition in Doe that "[t]he vast majority of verbal statements thus will be testimonial" because "[t]here are very few instances in which a verbal statement, either oral or written, will not convey information or assert facts." [Doe, 487 U.S. at 213, 108 S.Ct. 2341]. Whenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the "trilemma" of truth, falsity, or silence, and hence the response (whether based on truth or falsity) contains a testimonial component.

Id. at 596-97, 110 S.Ct. 2638 (emphasis added).
We conclude, therefore, at least as a matter of Pennsylvania constitutional law, "that application of the privilege is not limited to persons in custody or charged with a crime; it may also be asserted by a suspect who is questioned during the investigation of a crime." Combs v. Coyle, 205 F.3d 269, 283 (6th Cir.2000).[12]
Thus, because the privilege against self-incrimination applies to pre-arrest settings, the trial court erred when it overruled a defense objection to the Commonwealth's argument that Molina's refusal to talk to police investigating his involvement in Snodgrass' disappearance is evidence of his guilt.
The next question is whether the error was harmless. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Commonwealth v. *1257 Story, 476 Pa. 391, 383 A.2d 155 (1978); Maloney, supra. In this evaluation:
[A]n error will be deemed harmless where the appellate court is convinced beyond a reasonable doubt that the error could not have contributed to the verdict. Guidelines for determining whether an error is harmless include: (1) whether the error was prejudicial to the defendant or if prejudicial, whether the prejudice was de minimis; (2) whether the erroneously admitted evidence was merely cumulative of other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) whether the evidence of guilt was so overwhelming as established by properly admitted and uncontradicted evidence that the prejudicial effect of the error was so insignificant by comparison to the verdict.
Commonwealth v. Nolen, 535 Pa. 77, 85, 634 A.2d 192, 196 (1993) (citing Story, 476 Pa. at 410-15, 383 A.2d at 164-66) (footnote omitted)).
The burden of establishing that the error was harmless rests upon the Commonwealth. Story, 476 Pa. at 406, 383 A.2d at 162 n. 11. We do not need to decide whether the error was harmless because neither the Commonwealth nor Molina have raised the question, see Commonwealth v. Dent, 837 A.2d 571, 582 n. 2 (Pa.Super.2003); cf. Commonwealth v. Mitchell, 576 Pa. 258, 280, 839 A.2d 202, 215 n. 11 (2003); Commonwealth v. Wright, 599 Pa. 270, 312, 961 A.2d 119, 144 (2008). However, even if we were to decide it, we would conclude the error was not harmless.
Our Supreme Court
has recently emphasized, `the mere revelation of silence does not establish innate prejudice.' DiNicola, [581 Pa. at 563,] 866 A.2d at 336-37 (citing [Commonwealth v. Whitney, 550 Pa. 618, 633, 708 A.2d 471, 478 (1998)] ("Even an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt.")).
Commonwealth v. Spotz, 582 Pa. 207, 226, 870 A.2d 822, 833 (2005).
In DiNicola, our Supreme Court also noted:
Taken at face value, the revelation of silence in this case was limited to its context. The trooper revealed the exchange with [defendant] wherein a denial of wrongdoing was immediate, and the decision to engage in further discussion with the trooper was declined. In this situation, the reference to silence and its Fifth Amendment source was circumspect; it was not used in any fashion that was likely to burden [defendant]'s Fifth Amendment right or to create an inference of an admission of guilt.
DiNicola, 581 Pa. at 563, 866 A.2d at 337.
Here, as noted, the Commonwealth referred to Molina's refusal to discuss the disappearance of Snodgrass during the closing argument. The Commonwealth invited the jury to find guilt from Molina's silence, arguing his refusal to cooperate was "most telling." N.T. Trial, 12/18-12/20/06, Vol. II, at 580. We note, of course, that during the closing the Commonwealth told the jury that statements made by counsel are not evidence. Id. at 561-62, 575. In addition, the trial court, even though it refused to sustain a defense objection to the Commonwealth's argument or give a specific cautionary instruction about the argument, told the jury that Molina was presumed to be innocent, id. at 586-87; that his exercise of his right not to testify at trial and to remain silent was "founded upon the Constitutions of the United States and the Commonwealth of *1258 Pennsylvania," id. at 595; that the jury was not "to infer guilt from that decision" or "draw any inference adverse to [Molina] as a result of his decision not to testify," Id.; and that the jury should consider counsel's arguments as a tool to analyze the facts but that counsel's argument was not evidence. Id. at 605-06.
Nevertheless, the prejudice to Molina cannot by any stretch be considered de minimis. The Commonwealth explicitly invited the jury to infer guilt from Molina's constitutionally protected silence. This is precisely the kind of burdening of his Fifth Amendment right, and the creation of an inference of guilt from an assertion of that right, that DiNicola warned against.
Moreover, the error cannot be deemed harmless under the other parts of the harmless error doctrine. See Nolen, supra.
First, we are not dealing with evidence that was improperly admitted, but which is merely cumulative of the other properly admitted evidence. The evidence was not cumulative and was properly admitted for one purpose and then improperly used at closing argument for another.
Second, the evidence "was [not] so overwhelming as established by properly admitted and uncontradicted evidence that the prejudicial effect of the error was so insignificant by comparison to the verdict." Nolen, supra.[13] Here, although the Commonwealth put forward substantial evidence against Molina, it was not overwhelming. Additionally, the error was not so insignificant that it could not have contributed to the verdict.
Judgment of sentence reversed. Case remanded for a new trial.
NOTES
[*] Retired Senior Judges assigned to the Superior Court.
[1] Counsel for Molina filed a Pa.R.A.P. 1925(c)(4) statement raising four issues. On appeal, however, Molina has raised only one issue, addressed below. See also note 6.
[2] The parties referenced federal and state cases in their briefs but did not address the issue at hand as requiring separate consideration of the underlying issue under the Pennsylvania Constitution. It should be noted, however, "Pennsylvania's constitutional privilege offers somewhat greater protection than the federal privilege." Commonwealth v. Kirwan, 847 A.2d 61, 65 n. 5 (Pa.Super.2004) citing Commonwealth v. Swinehart, 541 Pa. 500, 525, 664 A.2d 957, 969 (1995). See also Commonwealth v. Turner, 499 Pa. 579, 454 A.2d 537 (1982).
[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[4] Of Course, Molina did not testify at trial. As noted earlier in its opinion: "[W]hile Molina exercised his constitutional protected right to remain silent at the time of trial, his `testimony' was presented to the jury by virtue of the testimony of Detective Hawthorne-Bey when she testified that he denied any knowledge of [Snodgrass]' disappearance and underscored that by stating that he had not seen her in at least three months and possibly a year and one half." T.C.O. at 25-26. However, since he did not testify at trial, Molina's credibility was not an issue and therefore the testimony could not have been admitted to demonstrate his unreliability as a witness. See Commonwealth v. Boyle, 498 Pa. 486, 496, 447 A.2d 250, 255 (1982).
[5] Our decision in Lettau has been recently reversed. See Commonwealth v. Lettau, 604 Pa. 437, 986 A.2d 114 (2009). Our Supreme Court held cross-examination of a defendant about his level of cooperation with investigation did not violate defendant's right to remain silent as it was a permissible method of impeaching defendant and a fair response to defendant's alleged cooperation with the investigation. See id.
[6] Additionally, while it is not relevant here in light of our disposition of the matter, we disagree with the trial court (and Appellant's counsel) suggesting Molina waived the issue of whether the trial court erred in not granting a mistrial because trial counsel did not specifically ask for it. As we noted in Commonwealth v. McGeth, 424 Pa.Super. 321, 622 A.2d 940 (1993):

We believe that, under the present law of this Commonwealth, when an objection is overruled, failing to request curative instructions or a mistrial does not result in waiver. In Commonwealth v. Maloney, 469 Pa. 342, 365 A.2d 1237 (1976), the Pennsylvania Supreme Court suggested that, when defense counsel objects to certain remarks of the prosecutor and the trial judge overrules the objection, this preserves the matter for appellate review. The Maloney court stated:
Herein, the objection was overruled, which distinguishes the situation from that presented in [Commonwealth v. Glenn, 459 Pa. 545, 330 A.2d 535 (1974)].... And finally, [because] the objection was overruled, the trial judge was in effect saying the district attorney's remarks were proper. Under such circumstances, a motion for a mistrial [or curative instructions] would be an exercise in futility.
Maloney, 469 Pa. at 352, 365 A.2d at 1242 (emphasis added). By overruling defense counsel's objections in the present matter, the trial court was, in effect, saying that the prosecutor's comments were proper.... While defense counsel could have engaged in a futile exercise by requesting relief anyway, we do not believe his failing to do so amounts to waiver of his objections on appellate review.
McGeth, 622 A.2d at 943. See also Commonwealth v. Easley, 483 Pa. 337, 342, 396 A.2d 1198, 1201 n. 6 (1979).
[7] See generally State v. Kulzer, 186 Vt. 264, 979 A.2d 1031 (2009).
[8] There is no dispute Molina's refusal to discuss the matter amounted to invoking his right against self-incrimination. See Commonwealth v. Treat, 848 A.2d 147 (Pa.Super.2004) ("There is no formula for determining... how the Fifth Amendment privilege can be asserted (nor do we think one should be created)....)" Id. at 148 (citation omitted). See also Quinn v. United States, 349 U.S. 155, 162, 75 S.Ct. 668, 99 L.Ed. 964 (1955). But if he had no right against self-incrimination, he cannot argue he is entitled to its protection. The Commonwealth argues Molina did not have a protected privilege he could have invoked under the circumstances.
[9] See also People v. Schollaert, 194 Mich.App. 158, 486 N.W.2d 312 (1992); State v. Masslon, 746 S.W.2d 618 (Mo.Ct.App.1988); State v. Leecan, 198 Conn. 517, 504 A.2d 480 (1986); State v. Helgeson, 303 N.W.2d 342 (N.D.1981).
[10] See also State v. Easter, 130 Wash.2d 228, 240-41, 922 P.2d 1285, 1291 (1996).
[11] "At its core, the privilege reflects our fierce unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt." Muniz, 496 U.S. at 596, 110 S.Ct. 2638 (quotation marks omitted) (citing Doe, 487 U.S. at 212, 108 S.Ct. 2341).
[12] See also United States v. Burson, 952 F.2d 1196 (10th Cir.1991); Coppola v. Powell, 878 F.2d 1562 (1st Cir.1989); United States ex rel. Savory v. Lane, 832 F.2d 1011 (7th Cir.1987); United States v. Caro, 637 F.2d 869 (2d Cir. 1981); People v. Waldie, 173 Cal.App.4th 358, 92 Cal.Rptr.3d 688 (2009); State v. Burke, 163 Wash.2d 204, 181 P.3d 1 (2008); State v. Leach, 102 Ohio St.3d 135, 807 N.E.2d 335 (2004); State v. Remick, 149 N.H. 745, 829 A.2d 1079 (2003); Commonwealth v. Thompson, 431 Mass. 108, 725 N.E.2d 556 (2000); State v. Moore, 131 Idaho 814, 965 P.2d 174 (1998); Taylor v. Commonwealth, 26 Va.App. 485, 495 S.E.2d 522 (1998); Tortolito v. State, 901 P.2d 387 (Wyo.1995); People v. Herr, 868 P.2d 1121 (Colo.Ct.App.1993); State v. Palmer, 860 P.2d 339 (Utah Ct.App.1993); State v. Rowland, 234 Neb. 846, 452 N.W.2d 758 (1990); State v. Fencl, 109 Wis.2d 224, 325 N.W.2d 703 (1982). Additionally,

[O]ther states have proscribed the substantive use of pre-arrest, pre-Miranda silence on state evidentiary law grounds, reasoning that such evidence has scant probative value and a substantial prejudicial effect when used to prove guilt. See, e.g., Mallory v. State, 261 Ga. 625, 409 S.E.2d 839, 842-43 (1991), overruled on other grounds by Clark v. State, 271 Ga. 6, 515 S.E.2d 155, 159 (1999); People v. DeGeorge, 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11, 12 (1989); State v. Pigg, 87 Or.App. 625, 743 P.2d 770, 771 (1987).
Kulzer, 979 A.2d at 1037 n. 3.
[13] In Story, our Supreme Court stated:

This Court has stated that an error may be harmless where the properly admitted evidence of guilt is so overwhelming and the prejudicial effect of the error is so insignificant by comparison that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict. [FN] Commonwealth v. Davis, 452 Pa. 171, 178-79, 305 A.2d 715, 719 (1973); accord, Schneble v. Florida, 405 U.S. 427 [92 S.Ct. 1056, 31 L.Ed.2d 340 (1972)].
Under this approach, a reviewing court first determines whether the untainted evidence, considered independently of the tainted evidence, overwhelmingly establishes the defendant's guilt. If "`honest, fair minded jurors might very well have brought in not guilty verdicts,'" an error cannot be harmless on the basis of overwhelming evidence. Once the court determines that the evidence of guilt is overwhelming, it then decides if the error was so insignificant by comparison that it could not have contributed to the verdict.
We have cautioned that
"a conclusion that the properly admitted evidence is `so overwhelming' and the prejudicial effect of the ... error is `so insignificant' by comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly."
[Davis,] 452 Pa. at 178-79, 305 A.2d at 720. Accordingly, we have been reluctant to find an error harmless on the basis of overwhelming evidence.
[FN] As this formulation of the overwhelming evidence test suggests, an error may be so prejudicial that it is not harmless even though there is overwhelming evidence of defendant's guilt. See Commonwealth v. Dobson, 465 Pa. 91, 348 A.2d 132 (1975); Commonwealth v. Barron, 438 Pa. 259, 264 A.2d 710 (1970); Commonwealth v. Pearson, 427 Pa. 45, 233 A.2d 552 (1967).
Story, 476 Pa. at 413, 383 A.2d at 166.