J-A23031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                :             PENNSYLVANIA
                                :
              v.                 :
                                :
                                :
HERBERT TRAVER               :
                                :
            Appellant        :    No. 382 MDA 2021

Appeal from the Order Entered March 19, 2021
In the Court of Common Pleas of Wyoming County Criminal Division at
No(s): CP-66-CR-0000283-2018

BEFORE:    PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED JANUARY 06, 2022**

Defendant/Appellant, Herbert Traver, files this interlocutory appeal from

the trial court's order denying his motion to bar retrial on grounds of double

jeopardy. Specifically, Mr. Traver contends that double jeopardy attached

when the Commonwealth impermissibly referenced his pre-arrest silence

during its cross-examination of him at trial. After careful consideration, we

affirm the trial court's order finding no reckless misconduct on the part of the

Commonwealth and remand for a new trial.

In June of 2018, Mr. Traver was arrested and charged with one count of

rape, one count of corruption of minors, and two counts of indecent assault

on allegations that he sexually assaulted D.R., his step-granddaughter, on

_____

[*] Former Justice specially assigned to the Superior Court.

various occasions starting when she was 11 years old. The rape allegedly occurred in July of 2014, when D.R. was 12 years old.

A three-day jury trial commenced on May 20, 2019. D.R., who was 17 years old at the time of trial, testified, as did her brother, the investigating police officer, and a psychologist who provided expert testimony on delayed reports by child victims. The defense called seven witnesses, including family members, friends, Traver's primary care physician, and Traver himself, who collectively offered testimony calling into question whether Traver, 72 years old at the time of trial, was physically capable of committing sexual assault given his physical limitations and medical diagnoses, including clinical blindness, cardiac issues, and alleged erectile dysfunction.

Specifically at issue is the following exchange during the Commonwealth's cross-examination of Traver:

> **Cmwlth:** Good afternoon sir. The things you testified to[--]you never touched [D.R.'s] breasts, you never touched her vagina, and you never had intercourse with her[--]and you were contacted by Trooper Cooney in February, 2016, you never told him that, did you?
>
> **Traver:** He never asked me if I ever touched her.
>
> **Cmwlth:** Because you never called him back, did you?

N.T., 5/22/2019, at 611.

The defense lodged an objection and requested a sidebar, during which it moved for mistrial on the argument that the Commonwealth had subverted Traver's right to pre-arrest silence. In apparent anticipation of such a motion,

the Commonwealth supplied the court with caselaw to support its position that reference to a defendant's *pre-arrest* silence is permissible to impeach a defendant witness. Nevertheless, despite finding that the Commonwealth had not engaged in prosecutorial overreaching, the trial court granted the defense motion and declared a mistrial, citing its concern that the implication of the question "may have had the affect [sic] of biasing the jury." Trial Court Opinion, 4/16/21, at 5.

Prior to the commencement of a new trial, Traver filed a motion to dismiss on double jeopardy grounds. After considering oral argument and briefs, the trial court denied Traver's motion to dismiss on the conclusion that double jeopardy protection was unwarranted in the absence of requisite intentional prosecutorial misconduct. ***See Commonwealth v. Smith***, 615 A.2d 321 (Pa. 1992) (predicating double jeopardy protection on prosecutorial misconduct *intended* to either prompt a defense motion for mistrial or deprive defendant of a fair trial). Traver filed a timely interlocutory appeal to this Court.

In ***Commonwealth v. Traver***, 1722 MDA 2019, unpublished memorandum at **1-3 (Pa.Super. 2020), a panel of this Court concluded there was no intentional misconduct by the prosecutor to cause a defense motion for mistrial or deprive Traver of a fair trial. However, it remanded the matter for reconsideration of the facts under the Pennsylvania Supreme Court's new decision in ***Commonwealth v. Johnson***, 231 A.3d 807 (Pa.

2020), which expanded grounds for double jeopardy relief to include *unintentional* prosecutorial misconduct that is, nevertheless, reckless.

On remand, the trial court determined the prosecutor did not recklessly ask the question at issue. In so determining, the trial court rejected Traver's position that the prosecutor falsely misled the jury into thinking Traver avoided answering the Trooper's pre-arrest questions regarding the allegations against him.

Specifically, the court opined that it was actually defense counsel who informed the jury through his cross-examination of Trooper Cooney that Traver was aware of the allegations against him as early as 2016 when he chose not to return a phone call by Trooper Cooney, who left a message that he sought an interview. The trial court alludes to the following exchange in support of its opinion:

> **Defense Counsel:** 2018. OK. Now you'd agree with me that these allegations were under investigation, really, since 2016.
>
> **Trooper Cooney:** Correct. It was February of 2016.
>
> **Q:** OK and you'd agree with me that Mr. Traver was made aware, either through your office or through other – through Human Services, Children and Youth Services that he was under investigation?
>
> **A:** Yes, I reached out to Mr. Traver originally after I got the original referral. I left a message at his house and a different attorney at the time, that he had contacted me.

N.T., 5/21/19, at 187-88.

As such, the trial court concluded that the Commonwealth's reference to Traver's failure to cooperate with the investigation when confronted with D.R.'s accusations was an explanation in fair response to defense counsel's line of questioning revealing to the jury that the investigation into Traver had begun in 2016—nearly two and one-half years prior to his arrest—when Traver had been contacted by Children and Youth Services and Trooper Cooney.

In his timely interlocutory appeal, Traver presents the following questions for this Court's consideration:

1. Did the prosecutor in the trial before the lower court engage in reckless misconduct by questioning Appellant during cross examination in a manner which violated his right to remain silent under the 5th and 14th Amendments to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution?

2. Assuming, *arguendo*, misconduct, was the unavoidable affect [sic] of the prosecutor's actions a denial of the Appellant's right to a fair trial?

Brief for Appellant, at 4.

Our standard and scope of review in this case are as follows:

An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*[.] To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings[.]

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the

fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

***Commonwealth v. Sanchez***, --- A.3d ----, 2021 PA Super 197 (Oct. 4, 2021) (citations omitted).

Prior to ***Johnson***, the Pennsylvania Supreme Court held in ***Smith*** that the double jeopardy clause of the Pennsylvania Constitution prohibits retrial of a defendant not only in instances where the prosecutorial misconduct was intended to provoke a defense motion for mistrial but also where it was intended to deprive a defendant of a fair trial. ***Smith***, thus, distinguished a prosecutor's "mere error" from "overreaching," with only the latter constituting a tactic that "reflects that the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." ***Johnson***, 231 A.3d at 820 (discussing ***Smith*** and ***Commonwealth v. Simons***, 522 A.2d 537, 539 (Pa. 1987)). The double jeopardy clause, our Supreme Court concluded, was designed to protect against such a tactic.

***Johnson*** expanded the class of prosecutorial overreaching sufficient to invoke double jeopardy protections to include not only intentional conduct but also conduct "undertaken recklessly, that is, with a conscious disregard for a substantial risk that [the deprivation of a defendant's right to a fair trial] will result." ***Id.*** at 826.

Recently, this Court discussed the ***Johnson*** standard of reckless misconduct, as follows:

> In ***Johnson***, our Supreme Court considered whether the double jeopardy clause bars retrial "where the Commonwealth obtains a conviction based on false evidence and its misconduct, while not

- 6 -

undertaken with the intent to deny the defendant a fair trial, nevertheless stems from prosecutorial errors that rise substantially above ordinary negligence." **Johnson, supra** at –– ––, 231 A.3d at 810. The relevant facts of **Johnson** are as follows. During investigation of the victim's death, police recovered a red baseball cap located in the middle of the street approximately nine feet from the victim's body. The cap was assigned a property receipt number. Shortly after the murder, the victim's friend Ms. Williams gave a statement to police. Ms. Williams was with the victim on the night of the murder and described the details of her observations to police. Ms. Williams also explained that the victim had worn a black baseball cap on the night in question. After the shooting, Ms. Williams picked up the black baseball cap, which had a bullet hole in it, and she gave it to police while giving her statement. The black baseball cap was assigned a separate property receipt number and was submitted to the crime lab for testing. Testing revealed the presence of the victim's blood under the brim of the black cap. Several years later, upon new information connecting the appellant to the crime, police obtained a sample of the appellant's DNA and submitted it for testing along with the red cap. Testing showed the appellant was a contributor to the DNA in the sweatband of the red cap.

The Commonwealth subsequently proceeded with its prosecution of the case as if there was only one baseball cap—the red one—which the Commonwealth argued contained both the victim's blood and the appellant's DNA. Nevertheless, the Commonwealth's argument was factually inaccurate, as neither cap had DNA from both individuals.

At trial, the Commonwealth's crucial piece of physical evidence was the red baseball cap, and the prosecutor repeatedly suggested that the appellant had shot the victim at point blank range. Consistent with the Commonwealth's factually inaccurate theory of the case, the lead crime-scene investigator testified at trial that when he recovered the red baseball cap from the scene, he saw fresh blood underneath the brim of the cap. The Commonwealth's forensic scientist also testified that the victim's blood and the appellant's DNA were both found on "the hat." In closing argument, the prosecutor again told the jury that the DNA evidence showed the appellant's sweat on the sweatband of the red cap, as well as the victim's blood on the brim.

In PCRA proceedings, the appellant learned the two caps, a red one and a black one, had been analyzed in connection with the Commonwealth's case, and that the victim's blood was found only on the black one. The Commonwealth thereafter agreed that the appellant was entitled to a new trial. The appellant subsequently filed a motion to dismiss based on double jeopardy grounds. The appellant learned during discovery related to the motion to dismiss, that the Commonwealth had "misunderstood its own evidence and conflated the findings related to the red and black caps." *Id.* at −−−−, 231 A.3d at 813-14. Notwithstanding the "unimaginable mistakes by experienced police officers and an experienced prosecutor" made in the case, the trial court found no intentional misconduct or bad faith on the Commonwealth's part and denied the appellant's motion to dismiss. *Id.* at −−−−, 231 A.3d at 815-16. This Court affirmed the trial court's ruling.

On appeal to the Supreme Court, the Court initially decided that the record supported the trial court's credibility determinations in favor of the Commonwealth. The Court stated that the trial court had personally heard extensive testimony from numerous witnesses involved in the prosecution, actively questioned many of the witnesses himself, and ultimately credited the prosecutor's testimony and found the Commonwealth had not acted with the intent to deprive the appellant of a fair trial. *Id.* at −−−−, 231 A.3d at 818-19.

Regarding the scope of double jeopardy protections, the Supreme Court held that "prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result." *Id.* at −−−−, 231 A.3d at 826. In so holding, the Court clarified that it did not "suggest that all situations involving serious prosecutorial error implicate double jeopardy[.]" *Id.* Rather, "retrial is only precluded where there is prosecutorial **overreaching**—which, in turn, implies some sort of conscious act or omission." *Id.* (emphasis in original).

Applying its holding to the facts of the case at hand, the Court emphasized the trial court's findings that the prosecutor had made "almost unimaginable" mistakes, which "dovetailed" with other serious errors by law-enforcement officers and other police personnel such as the DNA lab technician. *Id.* Recounting the errors in the case, the Court highlighted: (1) the prosecutor's

- 8 -

failure to notice that there were two property receipt numbers for the two caps, and his failure to verify whether the receipt numbers pertained to different caps; (2) the prosecutor's failure to obtain a criminalistics report which would have summarized the evidence and revealed that there were two different caps involved; (3) the failure of the detective who had interviewed Ms. Williams on the night of the shooting to recall the evidence of the black baseball cap and Ms. Williams' statement that the victim had worn the black cap on the night of the murder; (4) the false testimony from the lead crime scene investigator at trial that he saw fresh drops of blood under the brim of the red cap on the night of the murder, which was factually inaccurate. On this point, the Court stated it could not "escape the conclusion that the officer testified to something that he did not actually observe[.]" *Id.* at ––––, 231 A.3d at 827. Thus, the Supreme Court held that the Commonwealth's actions were "strongly suggestive of a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial." *Id.* Such actions prejudiced the appellant to the point of a denial of a fair trial, immunizing the appellant from retrial for the murder of the victim.

*Commonwealth v. Sanchez*, --- A.3d ----, 2021 PA Super 197 (Oct. 4, 2021).

Traver claims the Commonwealth's cross-examination was done in reckless disregard of the risk that confronting him with his pre-arrest silence would violate his federal and state rights to silence and, thus, deprive him of a fair trial. As such, he concludes that at the very least a reckless use of his silence occurred that brings his case within the scope of *Johnson*, such that double jeopardy relief must attach. We disagree.

Both the Fifth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution protect an individual's right not to be compelled to be a witness against himself or herself. *Commonwealth v. Adams*, 39 A.3d 310, 316 (Pa.Super. 2012), *aff'd*, 104 A.3d 511 (Pa.

2014). This right has been held to extend to the pre-arrest setting, but decisional law of this Commonwealth has observed that when defendants elect to testify, the Commonwealth may comment on their pre-arrest silence for impeachment purposes or in fair response to their testimony or defense tactics:

> The Fifth Amendment and the Fourteenth Amendment's due process clause generally prohibit a prosecutor from commenting upon a criminal defendant's decision not to testify or upon his decision to remain silent during the preliminary stages of a criminal investigation. *See Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Griffin v. California*, 380 U.S. 609, 613–14, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Commonwealth v. Randall*, 758 A.2d 669, 681 (Pa.Super. 2000). The United States Supreme Court has held that, when a defendant elects to testify, neither the Fifth Amendment nor due process principles are offended by a prosecutor's reference to that defendant's silence, when that reference is used to impeach the testifying defendant's credibility. This holds true whether a defendant chooses to remain silent pre-arrest or [. . . ] post-arrest where no *Miranda* warnings are given.[fn] *See Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980) (pre-arrest); *Brecht v. Abrahamson*, 507 U.S. 619, 628, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citing *Fletcher v. Weir*, 455 U.S. 603, 606–07, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (*per curiam* ) (post-arrest)).

> . . .

> [I]n *Commonwealth v. Bolus,* 545 Pa. 103, 680 A.2d 839 (1996)[, the Pennsylvania Supreme Court] was "called upon for the first time to decide whether a prosecutor may refer to a criminal defendant's pre-arrest silence." *Id.* at 843. The Court expressly distinguished [*Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537 (1982)[(addressing reference to post-arrest, pre-*Miranda* silence)] based upon the time at which the accused's silence occurred. The Court explained:

> We find **Turner**, however, to be distinguishable from the instant matter. In **Turner**, the period of silence which was referenced by the prosecution occurred after the defendant's arrest, but prior to the time the defendant was given his **Miranda** warnings. In the instant matter, the prosecutor questioned Appellant regarding his silence which occurred months before he was arrested.
>
> **Id**. The **Bolus** Court adopted the United States Supreme Court's rationale in **Jenkins**, and held that, "when a criminal defendant waives his right to remain silent and testifies at his own trial, neither the United States nor the Pennsylvania Constitution prohibit a prosecutor from impeaching a defendant's credibility by referring to his pre-arrest silence." **Id**. at 844.

**Commonwealth v. Kuder**, 62 A.3d 1038, 1049, 1051-52 (Pa.Super. 2013).

> Furthermore:
>
> a prosecutor may make fair comment on the admitted evidence and may provide fair rebuttal to defense arguments." **Commonwealth v. Burno**, 626 Pa. 30, 94 A.3d 956, 974 (2014). "Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made." **Id.** (citation and internal quotation marks omitted).

**Commonwealth v. Reid**, 259 A.3d 395, 429 (Pa. 2021). **See also Commonwealth v. Fischere**, 70 A.3d 1270, 1276 (Pa.Super. 2013) ("our Supreme Court has held 'there is no Fifth Amendment proscription precluding the raising of silence in fair response to defense argumentation.') (citing **Commonwealth v. DiNicola**, 866 A.2d 329, 335 (Pa. 2005)); **Adams**, **supra** (holding prosecutor's remarks about defendant's pre-arrest silence were fair response to defense commentary and therefore did not violate right to silence under Article I Section 9).

- 11 -

In the case *sub judice*, both the prosecutor's question put to Mr. Traver and his subsequent clarification of Mr. Traver's confusing, if not misleading, reply were collectively, in significant part, fair response to the defense tack of informing the jury both in its opening statement and through its cross-examination of Trooper Cooney that the investigation's focus on Mr. Traver had lasted two and one-half years before he was finally arrested. While asking Mr. Traver if he ever offered to Trooper Cooney the denial he had just stated for the jury implicated his pre-arrest silence, the brief reference was part of an exchange that, taken as a whole, provided an explanation for the protracted investigative timeline that the defense had called into question. **See DiNicola**, **supra** (reference to a defendant's refusal to speak to trooper constituted fair response to defense counsel's questioning of the adequacy of the trooper's investigation).

Therefore, in light of the fact that a purpose other than suggesting guilt was served by the cross-examination in question, we join in the trial court's discernment that nothing in the record evinces the prosecution's conscious disregard of justice, or "wanton or heedless indifference to consequences," undertaken in the hope of securing a favorable verdict that would warrant the double jeopardy sanction.

As indicated, the Commonwealth had not referred to Mr. Traver's pre-arrest silence in either its opening statement or its case-in-chief, it broached the topic only after the defense twice referred to the long passage of time between initial accusations against Mr. Traver and his arrest, and it was the

trial court's perception that the question was asked in earnest[1] to impeach or provide fair response to Mr. Traver's testimony after he had elected to waive his right to remain silent by taking the witness stand and offering a categorical denial of having committed the acts with which he was charged.

On this last point, the fact that the question put to Mr. Traver did not offend his federal constitutional right to silence, and that decisional law on Article I, Section 9 likewise permits such a question if it impeaches his credibility on a basis other than silence equating to a tacit admission or if it constitutes fair response to testimony or defense strategy, are further indication of the complexities attendant to referencing the pre-arrest silence of a testifying defendant that work in favor of upholding the trial court's assessment here that any error on the Commonwealth's part in asking its question was just that, an error, and not "some sort of conscious act or omission" on which, **Johnson** observes, the double jeopardy bar must be based. **Id.**, 231 A.3d at 826.

Therefore, we would concur with the trial court in its determination that any error committed by the Commonwealth during its cross-examination did not reach the level of prosecutorial misconduct reflecting a reckless, conscious disregard for Mr. Traver's right to receive a fair trial.

---

[1] We see no reason to disrupt the court's credibility determinations in favor of the Commonwealth, which are supported by the record. **See Graham, supra**. **See also Johnson,** 231 A.3d at 818 (discussing great deference afforded to trial courts regarding credibility determinations).

For the foregoing reasons, the trial court's denial of Mr. Traver's motion to bar retrial on grounds of double jeopardy is affirmed. Case is remanded to the trial court for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2022